UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARK CLIFFORD SYKES, | Case No. 2:22-cv-00956-JAD-EJY |
| Plaintiff, | |
| v. | **ORDER and**<br>**REPORT AND RECOMMENDATION** |
| HENDERSON POLICE DEPARTMENT, et al., | **Re: ECF No. 6**<br>**Plaintiff's First Amended Complaint** |
| Defendants. | |

This matter is before the Court for screening of Plaintiff's First Amended Complaint (the "FAC"). ECF No. 6. Plaintiff was granted *in forma pauperis* status on September 12, 2022. ECF No. 3.

**I.   SCREENING THE COMPLAINT**

Upon granting a request to proceed *in forma pauperis*, a court must screen the complaint under 28 U.S.C. § 1915(e)(2). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act, a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915

1

when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than [mere] conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed sua sponte if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on

fanciful factual allegations (e.g., fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.    DISCUSSION**

    A.    Background Facts.

Plaintiff's FAC alleges that on June 17, 2021, he was sitting in Morrell Park, in Henderson, Nevada, with a colleague. ECF No. 6 at 4. The two men were approached by three Henderson Police Department ("HPD") officers who were investigating a robbery that allegedly occurred near where Plaintiff and his colleague were sitting. *Id.*[1] Plaintiff and his colleague were told to put their hands up and walk toward patrol car lights. *Id*. Plaintiff alleges when he asked what the problem was, Officer Watts asked Plaintiff what happened regarding an altercation two parking stalls away. *Id*. at 4-5. Plaintiff responded he witnessed the event while sitting with his friend. *Id*. at 5. Plaintiff says he then gave Officer Watts his first name, last name, and birth date and asked Officer Shaffer what his problem was. *Id*. Officer Shaffer responded that Plaintiff had illegal tags on his car, which the officer was going to tow. *Id*. Plaintiff alleges these questions had nothing to do with the crime the Officers were investigating, and he told Officer Shaffer there was nothing illegal about his car. *Id*. Officer Shaffer is alleged to have told Plaintiff he was a liar because his colleague's car was really Plaintiff's car. *Id*. After turning to look at Officer Shaffer while speaking to him, Plaintiff states he was told to turn back around. *Id*. Plaintiff asserts that at this point he told Officer Shaffer he had "nothing further" to say, and he asked Officer Shaffer to call his watch commander. *Id*. Plaintiff says Officer Shaffer then "badgered" him causing Plaintiff to again tell Shaffer to call his watch commander because Shaffer was trying to provoke him. *Id*.

Sergeant Abernathy apparently arrived at the scene and asked Plaintiff for his middle name. Plaintiff explained he has a "Junior" associated with his name and that he did not want to be confused with someone else. *Id*. Plaintiff asked to be allowed to "get … [his] documents." *Id*. Plaintiff next alleges he was arrested for lying to a police officer. *Id*. Plaintiff says this was an unlawful arrest,

---

[1]    Plaintiff lists Officer C. Watts, Officer B. Shaffer, and Sergeant K. Abernathy, in their individual capacities, and the HPD in its individual and official capacity as defendants. *Id.* at 2-3.

3

followed by an unlawful search and towing of his car. Plaintiff represents he was found not guilty of the charges by a jury (supported by the docket sheet from the criminal proceeding).

Plaintiff alleges the Officers harassed him because of his race. Plaintiff says he was questioned by the Officers despite the fact that they knew, through dispatch, he could not be a suspect in a robbery as the robbers were described as Caucasian or Hispanic, not African American. Plaintiff also says the vehicle associated with the robbery was a stolen Honda, implying the Officers knew his car was not stolen. Plaintiff alleges the Officers conspired to make up the story that a second dispatch call informed them that a gray vehicle was involved in the robbery, which Plaintiff alleges was a pretext for allowing the Officers to harass him because his car is gray. Plaintiff asserts his review of the one and only dispatch call made to the HPD Officers on the day he was arrested shows the car involved in the robbery was a "blue Honda." Plaintiff argues a police report was created containing many of these lies and was done to discriminate against people of color.

Plaintiff alleges Heather Tuohy ("Tuohy" or the "Witness") witnessed the interaction between Plaintiff and the Officers, and that Touhy told the Officers neither Plaintiff nor his colleague was involved in the robbery. There is allegedly body camera footage of this conversation. Plaintiff contends the Officers ignored Tuohy and proceeded to violate Plaintiff's rights because of his race. Plaintiff argues he was arrested without probable cause and held in Clark County Detention Center for about 24 hours, an experience causing him emotional distress because he was detained without probable cause, under false allegations, and without a valid warrant.

Plaintiff asserts his arrest violated 42 U.S.C. § 1983 because of his warrantless arrest, without probable cause, Sergeant Abernathy had no right to seize him or his car, and both acts were done based on race. Plaintiff also alleges the HPD has a policy that is in violation of the Constitution.

B.  <u>Plaintiff's Fourteenth Amendment Racial Profiling Claim Against Officers Shaffer, Officer Watts, and Sergeant Abernathy May Proceed</u>.

When liberally construed, Plaintiff appears to allege his arrest was the result of racial profiling. The Court interprets this claim as arising under the Equal Protection Clause of the Fourteenth Amendment. Law established by the U.S. Supreme Court states the use of racial classification in law enforcement encounters is violative of the Fourteenth Amendment. *Whren v.*

4

*United States*, 517 U.S. 806, 813 (1996).  In order to state a claim for racial profiling, "a plaintiff must show … the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).  Alternatively, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'"  *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).  To succeed on a "class of one" claim, a plaintiff must show that he was intentionally treated differently than other similarly situated individuals without a rational basis for doing so.  *Id.* at 1022 (citations omitted).

Plaintiff alleges throughout his pleading the sole reason the HPD Officers questioned and arrested him was because of his race—African American.  Plaintiff asserts that prior to his encounter with Shaffer, Watts, and Abernathy, the Officers were informed through police dispatch that suspects involved in a robbery were a white male, a Hispanic male, and a white female.  Plaintiff argues despite this knowledge—and despite a witness informing one of the Officers that Plaintiff and his colleague were not involved in the robbery—the Officers advanced on Plaintiff and then questioned and arrested him.  Plaintiff contends, albeit not as clearly as the Court does here, that (1) these law enforcement officers used a pretext of verbal miscommunication as probable cause to arrest Plaintiff and search his vehicle, and (2) but for his race, African American, the officers would not have approached or arrested him.

Plaintiff pleads sufficient facts to support a facially plausible inference that Defendants Shaffer, Watts, and Abernathy were motivated by Plaintiff's race when they approached and arrested him on June 27, 2021.  These facts, while slim, are enough to cross the line from conceivable to plausible.  *Twombly*, 550 U.S. at 556-57.  Thus, Plaintiff's Fourteenth Amendment Equal Protection clause against Officers Shaffer, Officer Watts, and Sergeant Abernathy may proceed.

      C.      <u>Plaintiff Fails to state a Fourteenth Amendment Claim Against the HPD</u>.

To state a claim under 42 U.S.C. § 1983 against the HPD, Plaintiff must allege a constitutional violation arising out of an official department policy, practice, or custom.  *Monell v.*

5

*Department of Social Services of N.Y.*, 436 U.S. 658, 690 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Clouthier v. County. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier*, 591 F.3d at 1249 (quoting *Monell*, 436 U.S. at 708 (Powell, J. concurring)). "Second, under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy." *Id.* "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).

A single act by a non-policymaking official does not show the existence of a policy, custom, or practice. *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014). A municipal defendant may not be sued solely because an injury was inflicted by one of its employees or agents. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (citation omitted). The *Iqbal/Twombly* pleading standard applies to *Monell* claims. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Here, Plaintiff's claims against the HPD alleges the HPD carried out a policy of racial profiling. Plaintiff alleges that "Defendants developed, implemented, enforced, encouraged, and sanctioned a policy, practice, and custom of subjecting members of the Main Class to police stops without individualized, objective, and articulable reasonable suspicion of criminal activity … and without probable cause, as required by the Fourth Amendment." ECF No. 6 at 16. Plaintiff makes similar claims throughout his FAC contending the HPD maintained such a policy and that it did not adequately train its recruits on the importance of respecting civil rights. Plaintiff contends the Officers acted in accordance with HPD policies and customs when they arrested him.

1       The Court finds Plaintiff's allegations fail to establish the elements of a racial profiling claim against HPD under the *Monell* standard.  Even assuming Plaintiff can ultimately prevail on his racial profiling claim against the individual officers, there are no facts pleaded demonstrating the actions of the Officers were based on a well settled policy, custom or practice adopted by the HPD.  Plaintiff also fails to plead any of the individuals who are alleged to have committed the constitutional tort was an official with final policy-making authority or that any such official ratified the Officer's alleged unconstitutional actions.  Plaintiff's conclusory statement that the HPD adopted a racial profiling policy is insufficient to state this claim.  The Court recommends the Fourteenth Amendment, Equal Protection Clause claim asserted against HPD be dismissed.

D.      <u>Plaintiff Fails to State a Fourth Amendment Claim</u>.

To assert a valid claim for false arrest under the Fourth Amendment, Plaintiff "must plead facts that would show … [Defendant] ordered or otherwise procured the arrests and the arrests were without probable cause." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012); *see also Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on his § 1983 claim for false arrest ..., [Plaintiff] would have to demonstrate that there was no probable cause to arrest him.").  "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe that the suspect had committed a crime." *March v. Twin Cities Police Auth.*, Case No. C 14-00512 SI, 2014 WL 3725931, at *4 (N.D. Cal. July 25, 2014) (citation omitted).

According to Plaintiff's Exhibit A, Plaintiff was charged with making a false statement to or obstructing a public officer.  ECF No. 6 at 30.  While it is true that Plaintiff was found not guilty of this charge, this does not necessarily translate into a lack of probable cause at the time of Plaintiff's arrest.  The record of Plaintiff's underlying criminal proceedings (Exhibit A) demonstrates a Motion to Dismiss was denied by the state court as was a motion for a probable cause hearing. *Id*. at 30-31. Thereafter, a trial was held.  These proceedings demonstrate to this Court that probable cause for Plaintiff's arrest was sufficiently found to allow Plaintiff to proceed to trial. *Moreno v. Baca*, Case No. CV 00-07149 ABC CWX, 2001 WL 1204113, at *3 (C.D. Cal. July 9, 2001) (internal citation omitted); *Flores v. City of Bakersfield*, Case No. 1:17-cv-1393-JLT, 2019 WL 7038385, at *30 (E.D.

7

Cal. Dec. 20, 2019) ("Even where the plaintiff was acquitted in the criminal trial," there would have been no trial but for a probable cause determination.).  Thus, based on the information before the Court, the Court finds Plaintiff fails to state a Fourth Amendment violation based on an arrest unsupported by probable cause.

The search of Plaintiff's vehicle following his arrest also does not violate the Fourth Amendment. *United States v. Roberts*, 430 F.Supp.3d 693, 701 (D. Nev. 2019) *citing United States v. Robinson*, 414 U.S. 218, 234-35 (1973).  Inventory searches of vehicles is also a well-accepted "exception to the warrant requirement" so long as the search is "performed in strict accord with the police department's constitutionally sufficient[] standard procedures …." *United States v. Gibson*, Case No. 2:16-cr-00333-JAD-VCF, 2017 WL 3438450, at *4 (D. Nev. August 10, 2017) (citations omitted); *U.S. v. Centers*, Case No. 2:13-cr-0125-APG-GWF, 2013 WL 7019875, at *9 (D. Nev. Dec. 19, 2013) ("an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence").  Plaintiff fails to allege facts demonstrating the search of his vehicle was neither a lawful search following his arrest nor an inventory search done in compliance with HPD's procedure.  Thus, Plaintiff's allegation fails to establish a facial violation of the Fourth Amendment based on the search of his vehicle.

Finally, towing a car following an arrest does not necessarily state a violation of the Fourth Amendment. *United States v. Camou*, 773 F.3d 932, 938 (9th. Cir. 2014); *Hupp v. City of Walnut Creek*, 389 F.Supp. 2d 1229, 1233 (N.D. Cal. 2005).  Plaintiff's allegation regarding the towing of his car is conclusory.  The allegation fails to provide sufficient facts to support the assertion that Plaintiff's car was impermissibly towed in violation of the Fourth Amendment.

E. <u>Plaintiff's Claim Under 42 U.S.C. § 1986 Against Officer Shaffer, Officer Watts, and Sergeant Abernathy May Proceed</u>.

42 U.S.C. § 1986 "authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." *Cerrato v. San Francisco Community College Distr.*, 26 F.3d 968, 971 n.7 (9th Cir. 1994).  To properly allege a conspiracy under 42 U.S.C. § 1985(3), a plaintiff must assert four elements: (1) a conspiracy; (2) the purpose of depriving, either directly or indirectly any person or class of persons of the equal protection of the laws, or of

8

equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) the plaintiff is injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

Plaintiff's conspiracy claims under § 1985 contains one statement: "Defendants Officer Watts, Sergeant Abernathy conspired with [Officer] Shaffer to discriminate against the plaintiff after having knowledge of the wrongs being committed by [Officer] Shaffer and having the power to prevent or aid in preventing the wrong therefore is individually liable for the harm and injury done to plaintiff for violations of his secured and established constitutional common law rights."  ECF No. 6 at 22.  This sentence is insufficient to state a § 1986 claim.  However, the totality of the alleged facts in Plaintiff's FAC, liberally construed, sufficiently pleads: (1) Officers Shaffer and Watts, and Sergeant Abernathy agreed to pursue Plaintiff because he is African American; that is, but for his race, the Officers, allegedly, would not have acted as they did; (2) Plaintiff was arrested and held in CCDC for approximately 24 hours; (3) the Officers agreed, either directly or indirectly, to treat Plaintiff in the manner they did, despite knowing he was not a suspect in a robbery and knowing his car did not match the car allegedly involved in the robbery; and (4) Plaintiff's arrest and incarceration caused him harm in the form of a violation of the Fourteenth Amendment Equal Protection Clause. The Court therefore finds Plaintiff's 42 U.S.C. § 1986 claim may proceed.

F. <u>The Court Recommends Plaintiff's Intentional Infliction of Emotional Distress ("IIED") Claim against Officer Shaffer, Officer Watts, Sergeant Abernathy, and the HPD be Dismissed</u>.

   1. *The Court recommends Plaintiff's IIED claim against the Officers be dismissed without prejudice*.

To establish IIED in Nevada, Plaintiff must plead sufficient facts establishing: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff … suffered severe or extreme emotional distress, and (3) actual or proximate causation."  *Dillard Department Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (citation omitted).  "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency

9

and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

A police officer engages in extreme and outrageous conduct when he or she "engages in an extreme abuse" of the position. *Perez v. Cox*, Case No. 2:15-cv-01572-APG-DJA, 2022 WL 2704803, at *14 (D. Nev. July 11, 2022) (internal quotations and citation omitted). The determination of whether a police officer's conduct amounts to an extreme abuse of the position is dependent on the facts of the case. *Compare McCall v. Las Vegas Metropolitan Police Dep't*, Case No. 2:18-cv-01319-APG-EJY, 2020 WL 1433579, at *20 (D. Nev. Mar. 23, 2020) (finding no extreme abuse where plaintiff alleged he suffered emotional distress when a police officer gave plaintiff a trespass warning) *with Mitchell v. City of Henderson, Nevada*, Case No. 2:13-cv-01154-APG-CWH, 2017 WL 2841327, at *11-12 (D. Nev. July 3, 2017) (finding there was a question for a jury whether police officers had committed extreme abuse of their positions when they aimed loaded weapons at the unarmed plaintiff, forcibly entered his home without a warrant, shot him with pepper balls when he posed no threat to the officers, and handcuffed and injured him while he was not resisting). The Court may make a legal finding that conduct is or is not outrageous, but "where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F.Supp.2d 1103, 1121 (D. Nev. 2009); *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) ("The jury was entitled to determine, considering prevailing circumstances, contemporary attitudes and [the appellant's] own susceptibility, whether the conduct in question constituted extreme outrage.") (citation omitted).

Plaintiff alleges the Officers engaged in extreme and outrageous conduct when they approached him, asked him questions, arrested him, and detained him without probable cause to do so. ECF No. 6 at 24-25. Plaintiff contends these actions resulted in "harm, extreme and severe fright, shock, fear, horror, and emotional distress." *Id.* at 25. However, the Court finds Plaintiff fails to allege facts demonstrating a Fourth Amendment violation. Moreover, even if Plaintiff was arrested without probable cause, absent a showing of some additional outrageous conduct, this does not constitute an extreme abuse of police power. *Kelley v. City of Henderson*, Case No. 2:15-cv-02204-APG-VCF, 2017 WL 2802732, at *7 (D. Nev. June 27, 2017).

The Court next considers whether an allegation of racial profiling is sufficient to facially plead an extreme abuse of power. Case law suggests the Officers' conduct described by Plaintiff, even if accepted as true at this stage of proceedings, is insufficient to support an IIED claim. *See McDonald v. County of Sonoma*, 506 F. Supp. 3d 969, 987 (N.D. Cal. 2020) (finding officers engaged in "outrageous" conduct by allegedly knocking plaintiff unconscious while arresting him); *Burke v. County of Alameda*, 352 Fed.Appx. 216, 219 (9th Cir. 2009) (finding officer's conduct not "outrageous" in light of all the circumstances surrounding plaintiff's arrest even though plaintiff could establish a Fourth Amendment violation on the same facts). Besides expressing outrage based on racial profiling, Plaintiff's allegations fail to provide factual support for an extreme abuse of power required to establish extreme and outrageous conduct by the Officer defendants. For this reason, the Court recommends Plaintiff's IIED claims against Officer Shaffer, Officer Watts, and Sergeant Abernathy be dismissed without prejudice.

    2. *The Court recommends Plaintiff's IIED claim against the HPD be dismissed without prejudice.*

Nevada law permits an employer to be liable for an employee's negligence or intentional torts under respondeat superior. *Brennan v. Las Vegas Metropolitan Police Dep't*, Case No. 2:20-cv-00662-RFB-DJA, 2022 WL 990621, at *7 (D. Nev. March 31, 2022), *citing Busch v. Flangas*, 837 P.2d 438, 440 (Nev. 1992) (negligence); *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996) (intentional tort). "An actionable claim on a theory of respondeat superior requires proof that (1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment." *Id. citing Rockwell*, 925 P.2d at 1179. Here, Plaintiff fails to plead facts sufficient to establish a facially valid cause of action against the Officers thereby precluding a claim against the HPD based on respondeat superior. The Court recommends this claim be dismissed without prejudice.

  G. <u>Plaintiff's Claim of Negligent Infliction of Emotional Distress ("NIED") against Officer Shaffer, Officer Watts, Sergeant Abernathy, and the HPD may proceed.</u>

In *Southern Nevada Adult Mental Health Servs. v. Brown*, 498 P.3d 1278 (Table), 2021 WL 537082, at *4 (Nev. Nov. 17, 2021), the Nevada Supreme Court cited the Restatement (Third) of

Torts: Liability for Physical and Emotional Harm § 46 (Tentative Draft No. 5, 2007) (codified as amended at § 47 (Am. Law Inst. 2012)) as follows for purposes of establishing a NIED claim:

> Under the Restatement, a party whose conduct causes another "serious emotional harm ... is subject to liability to the other if ... the other [is] in danger of immediate bodily harm and the emotional harm results from the danger" or the other's serious emotional harm "occurs in the course of specified categories of activities, undertakings, or relationships." … Physical manifestations of emotional distress are not required for a plaintiff to have suffered "serious emotional harm." *Id.* at cmt. j. Instead, a plaintiff must demonstrate that a reasonable person would suffer serious emotional harm under similar circumstances and that "there [is] credible evidence that the plaintiff has suffered such harm.

Thus, "[under] Nevada law, an NIED claim by a direct victim [of the alleged conduct] has the same elements as an intentional infliction of emotional distress (IIED) claim, except that the plaintiff need only show that the acts causing distress were committed negligently." *Armstrong v. Reynolds*, 22 F.4th 1058, 1081-82 (9th Cir. 2022), *citing Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020). However, "[b]oth intentional and negligent infliction of emotional distress claims requi[r]e allegations of severe emotional distress." *Amie v. Kraft-Sussman Funeral Service, Inc.*, Case No. 2:18-cv-02131-GMN-VCF, 2018 WL 6272889, at *2 (D. Nev. Nov. 30, 2018) (internal citations omitted). Based on the totality of facts alleged, the Court finds Plaintiff states a facially valid NIED claim against Officers Shaffer, Watts, and Abernathy. That is, Plaintiff sufficiently alleges these defendants acted negligently when they allegedly harassed and then arrested Plaintiff based on his race in an alleged violation of his Fourteenth Amendment rights.

For this reason, Plaintiff's NIED claim against HPD may proceed under the theory of respondeat superior. Plaintiff sufficiently alleges the Officers were HPD employees and their conduct was within the course and scope of their employment to allow, at this stage of the proceedings, Plaintiff's claim of NIED to proceed against the HPD.

H. <u>Plaintiff's Defamation Claims Against the Officers and the HPD Are Recommended to be Dismissed Without Prejudice</u>.

Although not identified as a separate cause of action, the Court analyzes whether Plaintiff states a defamation claim as the issue is raised in the FAC. ECF No. 6 at 10. To state a claim for defamation under Nevada law, Plaintiff must allege "(1) a false and defamatory statement by [a]

12

defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019) (citation omitted); *see also* NRS § 200.510(1) (defining libel). Defamation may be stated based on the content of a police report if Plaintiff can identify a specific statement contained in the report that is alleged to be false. *Sykes v. Las Vegas Metropolitan Police Department*, Case No. 2:21-cv-01479-RFB-DJA, 2021 WL 5799381, at *4 (D. Nev. Dec. 3, 2021).

Here, Plaintiff alleges that "Officers Watts, Shaffer, and Sergeant Abernathy published false information in an arrest report that lacked "factual evidence authenticating, confirming that the person detained is the correct person ([Plaintiff]) as they only did a record check …." ECF No. 6 at 10. This conclusory allegation in the absence of facts demonstrating Defendants "published" the arrest report concerning Plaintiff to a third person in the absence of privilege, fails to state a defamation claim. That is, without an unprivileged publication, the defamation claim fails. For this reason, Plaintiff's defamation claim fails to state a claim upon which relief may be granted. The Court recommends this claim be dismissed without prejudice but with leave to amend.

### III. ORDER

IT IS HEREBY ORDERED that the following claims may proceed:

1. Plaintiff's racial profiling claim asserted under the Fourteenth Amendment against Officers C. Watts, B. Shaffer, and Sergeant K. Abernathy;

2. Plaintiff's 42 U.S.C. § 1986 claim against Officers C. Watts, B. Shaffer, and Sergeant K. Abernathy;

3. Plaintiff's Negligent Infliction of Emotional Distress claim against Officers C. Watts, B. Shaffer, and Sergeant K. Abernathy; and

4. Plaintiff's Negligent Infliction of Emotional Distress claim against the Henderson Police Department.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the following claims asserted by Plaintiff be dismissed without prejudice and without leave to amend as Plaintiff has already had an opportunity to amend his complaint, he may proceed with claims for racial profiling and Negligent Infliction of

Emotional Distress, and the remainder of his claims lack sufficient merit such that amendment, while not futile, is unlikely to cure the substantial deficiencies noted:

1. Plaintiff's Fourth Amendment claims for unlawful arrest, search of his vehicle, and towing of his vehicle;

2. Plaintiff's Fourteenth Amendment claim against the Henderson Police Department under *Monell*;

3. Plaintiff's Intentional Infliction of Emotional Distress claim against Officers C. Watts, B. Shaffer, and Sergeant K. Abernathy;

4. Plaintiff's Intentional Infliction of Emotional Distress claim against the Henderson Police Department; and

5. Plaintiff's Defamation claim against Officers C. Watts, B. Shaffer, and Sergeant K. Abernathy and the Henderson Police Department.

DATED this 28th day of February, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).