UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Mark Clifford Sykes,<br><br>  Plaintiff<br><br>v.<br><br>Henderson Police Department, et al,<br><br>  Defendants | Case No.: 2:22-cv-00956-JAD-EJY<br><br>**Amended[1] Order Resolving Objections to Report and Recommendation, Dismissing Some Claims, and Directing Service of Process on Defendants**<br><br>[ECF Nos. 7, 8] |

Plaintiff Mark Clifford Sykes sues the Henderson Police Department (HPD), Sergeant K. Abernathy, and Officers B. Shaffer and C. Watts for civil-rights violations related to his 2021 arrest and prosecution. The magistrate judge screened Sykes's first-amended complaint and recommends that seven of his claims be dismissed. And because Sykes already had an opportunity to amend his complaint, she recommends that those deficient claims be dismissed without leave to amend.[2] Sykes objects. On de novo review, I adopt the magistrate judge's recommendations to dismiss Sykes's Fourteenth Amendment *Monell* claim against the HPD and his claims for intentional infliction of emotional distress and defamation against the HPD and the individual officers. But I sustain two of Sykes's objections, allow his Fourth Amendment false-arrest and unreasonable-search-and-seizure claims to proceed because he pled enough facts to challenge the probable cause for his arrest and the search and seizure of his car, and I give Sykes until September 18, 2023, to take the steps necessary to permit the U.S. Marshal to serve the defendants with process.

---

[1] This order has been amended to remove a statement that Sykes must pay the fees charged by the U.S. Marshal to effectuate service on the defendants. *See* ECF No. 13. I have also extended Sykes's deadline to send the U.S. Marshal the USM-285 form required to effectuate service to October 20, 2023.

[2] ECF No. 7.

**Discussion**

**A.      The magistrate judge's recommendations and Sykes's objections.**

The magistrate judge screened Sykes's first-amended complaint and found that he adequately pled claims for racial profiling under the Fourteenth Amendment and conspiracy under 42 U.S.C. § 1986 against the officers, and a claim for negligent infliction of emotional distress against the officers and HPD. But she determined that Sykes did not allege sufficient facts to support his claims for (1) *Monell* liability alleging a policy of racial profiling, (2) false arrest and unreasonable search and seizure against the officers, (3) intentional infliction of emotional distress against the officers and HPD, (4) and defamation against the officers and HPD. Sykes objects to each of these recommendations.

A district court reviews objections to a magistrate judge's proposed findings and recommendations *de novo*.[3] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[4] The standard of review applied to the unobjected-to portions of the report and recommendation is left to the district judge's discretion.[5] Local Rule IB 3-2(b) requires *de novo* consideration of specific objections only.[6]

**B.      Sykes's Fourteenth Amendment *Monell* claim against HPD is dismissed.**

Sykes seeks to hold HPD liable for his arrest under *Monell v. Department of Social Services*, which imposes § 1983 liability on a municipal employer only if the constitutional violation by an employee was the result of the employer's policy, practice, or custom, or a

---

[3] *Id.*

[4] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

[5] *Id.*

[6] *See* Nevada L.R. IB 3-2(b) (requiring *de novo* consideration of specific objections only).

decision-making official directed or ratified the complained-of conduct.[7] To succeed on a *Monell* claim, a plaintiff must show that the policy or lack thereof caused his injury.[8] A plaintiff may recover under *Monell* based on one of three theories: (1) commission—when a municipality establishes an official policy or custom that causes the injury; (2) omission—when a municipality's oversight amounts to a deliberate indifference to a constitutional right; or (3) ratification—when a policymaker authorizes or approves of the constitutional injury.[9] Because Sykes alleges that there is a policy of racial profiling at HPD,[10] I construe his *Monell* claim as one advancing a commission theory.

To establish a commission-based *Monell* claim, the plaintiff must show "the existence of a widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law."[11] Sykes claims that HPD employs a policy of targeting Black men for unlawful stops,[12] but it is unclear what other facts, aside from Sykes's own interaction with HPD, this allegation is based on. Sykes's single arrest is not enough to establish a custom or policy of racial profiling.[13]

---

[7] *Hopper v. City of Pasco*, 241 F.3d 1067, 1082–83 (9th Cir. 2001) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1971)).

[8] *Bd. of Cnty. Comm'rs of Bryan Cnty, Okl. v. Brown*, 520 U.S. 397, 403–04 (1997).

[9] *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

[10] ECF No. 6 at ¶ 10.

[11] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

[12] ECF No. 6 at ¶ 10.

[13] *See Fabrizio v. Storey Cnty.*, 543 F. Supp. 573, 576 (D. Nev. 1982).

Sykes argues that he requires discovery to uncover HPD's policy and practice of racial profiling.[14] But the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[15] Sykes's subjective belief that a racial-profiling policy exists is merely a conclusory allegation and is not enough to permit this claim to move forward to the discovery phase. So I agree with the magistrate judge's conclusion that Sykes has not sufficiently pled a *Monell* claim. And because Sykes was already provided an opportunity to amend and properly address the elements of a *Monell* claim, but he was unable to do so, I dismiss this claim without leave to amend because amendment would be futile.[16]

## C.    Sykes's objections to the dismissal of his Fourth Amendment claims are sustained.

### 1.    *Sykes's false-arrest claim against the officers may proceed.*

Sykes also claims that he was unlawfully arrested by defendants Shaffer, Watts, and Abernathy.[17] He theorizes that the officers knew the stollen car and the robbery suspects were not in Morrell Park, and a witness to the robbery told officers that Sykes was not involved.[18] So Sykes theorizes that the arrest was conducted without probable cause or a warrant and as a result of racial profiling.[19]

---

[14] ECF No. 8 at 1.

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[16] *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (finding that leave to amend may be denied if amendment would be futile).

[17] ECF No. 6 at ¶ 17, 19.

[18] *Id*. at ¶ 12, 16.

[19] *Id*. at ¶ 16–17, 43.

To prevail on a false-arrest claim, a plaintiff must "demonstrate that there was no probable cause to arrest [him]."[20] "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed."[21] The "relevant inquiry is what the agents knew, collectively, at the time they arrested" the plaintiff.[22] Probable cause requires only a "fair probability" that a crime occurred.[23]

The Ninth Circuit has held that a plaintiff suing under § 1983 may be precluded from bringing a false-arrest claim based on a lack of probable cause if the underlying criminal proceedings stemming from the arrest included a preliminary hearing that established probable cause for the alleged crimes.[24] There are exceptions to this general rule: (1) if after arrest but before the preliminary hearing, additional evidence of a defendant's guilt is discovered and presented at the preliminary hearing, "the probable cause determination at the hearing would not be conclusive as to whether there was probable cause to arrest";[25] (2) tactical or strategic reasons led the litigant to not fully litigate probable cause during the criminal prosecution;[26] and (3) if it can be shown that the "prosecutor deliberately or recklessly misstate[d] or omit[ted] facts material to the existence of probable cause."[27]

---

[20] *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (quoting *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998)).

[21] *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

[22] *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005).

[23] *United States. v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002).

[24] *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994), as amended (Apr. 15, 1994).

[25] *Id.*

[26] *Id.*

[27] *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).

The magistrate judge found that probable cause was established in Sykes's previous criminal proceeding, preventing him from challenging probable cause for his arrest.[28] She relied on the docket from Sykes's criminal case—attached as an exhibit to his amended complaint—showing that Sykes filed a motion for a probable-cause hearing, and that motion was denied.[29] Sykes objects, arguing that the hearing never occurred because the parties were not present and that the judge presumably never made a probable cause determination at that hearing.[30]

At this early screening stage, I cannot determine whether probable cause for Sykes's arrest was established in the state-court proceeding. As Sykes points out, the docket sheet reflects that no parties were present at the probable-cause-motion hearing, and he suggests this means that the motion was not decided on its merits.[31] But even if I assume that the preliminary hearing or any other proceeding in state court established probable cause, the sparse docket sheet offers no insight into whether one of the many exceptions to the general preclusion rule applies in this case. And the Ninth Circuit has cautioned that this question may be premature for resolution at the motion-to-dismiss stage.[32] So I sustain Sykes's objection, overrule the magistrate judge's recommendation to dismiss Sykes's false-arrest claim against the individual officers, and allow this claim to proceed.

---

[28] ECF No. 7 at 7.

[29] *Id.* (citing ECF No. 6 at 31).

[30] ECF No. 6 at 31; ECF No. 8 at 2.

[31] ECF No. 8 at 2.

[32] See *Morley*, 175 F.3d at 761 (noting that "there could be circumstances precluding collateral estoppel" in § 1983 cases challenging probable cause, and distinguishing *Haupt*, which was decided on a summary-judgment motion, from determinations at the motion-to-dismiss stage).

### 2. *Sykes's unreasonable-search-and-seizure claim against the officers may proceed.*

Sykes also claims that his constitutional rights were violated by the search and impounding of his vehicle.[33] He theorizes that because he did not consent to the search and officers did not have a warrant, the search and seizure of his car violated his Fourth Amendment rights.[34] It is well-established that officers may search the passenger compartment of a car and containers therein without a warrant if the search is contemporaneous to a lawful arrest.[35] Inventory searches, justified by law enforcement's community-caretaking function, are also a well-recognized exception to the warrant requirement.[36] But they must be performed in strict compliance with the police department's constitutionally sufficient, standard procedures to ensure that the search is not just a "ruse for a general rummaging to discover incriminating evidence."[37] And good faith is required.[38]

The magistrate judge recommends dismissal of Sykes's unreasonable-search-and-seizure claim because Sykes failed to show that his car was not lawfully searched under the search-incident-to-arrest exception or the inventory exception.[39] Sykes argues that because his car was not involved in the crime, there was no probable cause to search it.[40] Although his car need not be criminally implicated to establish probable cause, I still find that Sykes pleads sufficient facts

---

[33] ECF No. 6 at ¶ 19.
[34] *Id.*
[35] *New York v. Belton*, 453 U.S. 454, 460–61 (1981).
[36] *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).
[37] *Florida v. Wells*, 495 U.S. 1, 4 (1990).
[38] *Colorado*, 479 U.S. at 374.
[39] ECF No. 7 at 8.
[40] ECF No. 8 at 2.

7

to challenge the probable cause for his arrest—and consequently the basis for the search incident to arrest of his car. Because I find that Sykes has stated a false-arrest claim, I also find that he has sufficiently pled that the search of his car was not a valid search incident to a lawful arrest.

The magistrate judge also applied the inventory exception, finding that Sykes failed to establish that his car was not lawfully searched as part of standard HPD inventory procedures.[41] But it is unclear from Sykes's first-amended complaint whether an inventory search was performed or whether the car was searched on site.[42] Sykes does allege that his car was unlawfully seized and towed.[43] The community-caretaking function allows officers to impound cars in the interest of public safety.[44] But officers cannot impound a car simply because the arrestee is the owner; there must be some reason "consistent with the police's role as 'caretaker.'"[45] Sykes was sitting in Morrell Park, and his car appears to have been parked in the adjacent lot.[46] The record does not reflect that the car was creating impediments to traffic or threatening public safety. Because impounding Sykes's car in these circumstances does not appear to fit within the officers' caretaker roles based on the limited record at this time,[47] Sykes has sufficiently alleged that his car was unlawfully seized and towed. So Sykes's Fourth Amendment search-and-seizure claim may proceed.

---

[41] ECF No. 7 at 8.
[42] ECF No. 6 at 6.
[43] *Id*. at 6, ¶ 19.
[44] *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).
[45] *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005) (citing *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir.1996)).
[46] ECF No. 6 at 4–6.
[47] *See Miranda*, 429 F.3d at 865.

### D. Sykes's intentional-infliction-of-emotional-distress claims against all defendants are dismissed.

Sykes next claims that defendants Shaffer, Watts, and Abernathy are liable for intentional infliction of emotional distress (IIED) for the way they treated him during the arrest.[48] Sykes alleges that the officers' conduct was extreme and outrageous because they commanded him to put his hands up and walk towards the light of the patrol car, despite Sykes's racial dissimilarity from the at-large suspects.[49] Sykes claims that the officers racially profiled him, and this caused extreme emotional distress.[50] But the magistrate judge recommends dismissal of Sykes's IIED claim because he needs more than outrage based on racial profiling and an arrest without probable cause to establish extreme or outrageous conduct.[51]

To prevail on this claim under Nevada law, a plaintiff must show that (1) defendants engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (2) plaintiff "suffered severe or extreme emotional distress," and (3) "actual or proximate causation."[52] "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[53] General physical or emotional discomfort is insufficient to demonstrate severe

---

[48] ECF No. 6 at ¶ 78.
[49] *Id*. at ¶ 11.
[50] *Id*.
[51] ECF No. 7 at 10–11.
[52] *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).
[53] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

emotional distress,[54] so is an arrest that lacks probable cause, without more.[55]  So Sykes's allegations fall short of stating a viable IIED claim.

      Sykes offers as a secondary factual basis for this claim the possibility that officers placed their hands on or possibly drew their guns during this interaction.[56]  But only once in his 56-page first-amended complaint does Sykes mention the possibility that officers drew their guns, and he uses qualifying language to describe it, stating, "It appears that the officers at the scene further discriminated against the plaintiff by using unnecessary force only on people of color . . . and possibly pointing firearms or having their hands on their firearms."[57]  Sykes needs more than the mere possibility that officers drew their guns or placed their hands on their firearms to establish extreme or outrageous conduct, so I dismiss Sykes's IIED claim without leave to amend because such amendment would be futile.

      Sykes also asserts his IIED claim against the HPD under a respondeat superior theory.  But because Sykes has alleged no IIED by any officer, the magistrate judge recommends the dismissal of this claim against HPD too.[58]  Sykes objects that he requires discovery to prove his IIED claim.[59]  A litigant must plead a plausible claim before he can pursue discovery on it, however, and Sykes has not done so here.  So I adopt the magistrate judge's recommendation and dismiss Sykes's IIED claim against the officers and the HPD.

---

[54] *Burns v. Meyer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (citing *Chowdhry v. NLVH Inc.*, 851 P.2d 459, 462 (Nev. 1993)).

[55] *E.g.*, *Kelley v. City of Henderson*, 2017 WL 2802732, at *7 (D. Nev. June 27, 2017) (unpublished); *Brown v. Tromba*, 2022 WL 16951439, at *7 (D. Nev. Nov. 14, 2022) (unpublished).  I find the reasoning in these non-binding authorities persuasive and adopt it here.

[56] ECF No. 8 at 4; ECF No. 6 at 6.

[57] ECF No. 6 at ¶ 11 (cleaned up).

[58] ECF No. 7 at 11.

[59] ECF No. 8 at 5.

### E. Sykes's defamation claims are dismissed.

Finally, Sykes claims that the HPD and the individual defendants defamed him by publishing false information in the incident report.[60] To establish defamation, "a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[61] Sykes's first-amended complaint merely declares that the incident report is false;[62] he does not identify a specific defamatory statement, nor does he plead facts that show publication to a third party. Sykes requests leave to amend his first-amended complaint,[63] presumably to include the specific defamatory statement and to address the publication element. But Sykes was informed of the gaps in his defamation claim once before and was unable to allege sufficient facts in his first-amended complaint to fill them.[64] I decline to provide him a second opportunity to do so because I find that amendment would be futile.

### Conclusion

IT IS THEREFORE ORDERED that Sykes's objection **[ECF No. 6]** is **SUSTAINED in part** and the magistrate judge's report and recommendation **[ECF No. 5]** is **ADOPTED in part**. **The following claims are dismissed without prejudice but without leave to amend**:

    a. Plaintiff's Fourteenth Amendment claim against the Henderson Police Department based on *Monell v. New York City Dept. of Social Services*;

    b. Plaintiff's claims for intentional infliction of emotional distress against the

---

[60] ECF No. 6 at ¶ 19.
[61] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993).
[62] ECF No. 6 at ¶ 15.
[63] ECF No. 8 at 6.
[64] ECF No. 3 at 9–10.

    Henderson Police Department, Sergeant K. Abernathy, and Officers C. Watts and B. Shaffer; and

  c. Plaintiff's defamation claims under NRS 200.510(1) against the Henderson Police Department, Sergeant K. Abernathy, and Officers C. Watts and B. Shaffer.

**So this case proceeds on the following claims:**

  a. Plaintiff's Fourteenth Amendment racial-profiling claim against Sergeant K. Abernathy and Officers C. Watts and B. Shaffer;

  b. Plaintiff's Fourth Amendment false-arrest claim against Sergeant K. Abernathy and Officers C. Watts and B. Shaffer;

  c. Plaintiff's Fourth Amendment unreasonable-search-and-seizure claim against Sergeant K. Abernathy and Officers C. Watts and B. Shaffer;

  d. Plaintiff's 42 U.S.C. § 1986 claim against Sergeant K. Abernathy and Officers C. Watts and B. Shaffer; and

  e. Plaintiff's negligent infliction-of-emotional-distress claims against the Henderson Police Department, Sergeant K. Abernathy, and Officers C. Watts and B. Shaffer.

IT IS FURTHER ORDERED that **the Clerk of Court is directed to ISSUE SUMMONSES** for the four defendants in this case.

IT IS FURTHER ORDERED that **the Clerk of Court is directed to deliver** four copies of Sykes's amended complaint [ECF No. 6] and this order, along with a summons for each of the four defendants, **to the U.S. Marshal for service.**

To allow the Marshal to complete service, IT IS FURTHER ORDERED that **Sykes must provide the Marshal with a completed USM-285 form for each defendant by October 20, 2023.** Sykes can obtain the USM-285 form at www.usmarshals.gov/process/usm285.pdf. Sykes

is reminded that this case proceeds against the HPD and three individual officers, so he must complete one USM-285 form for each of these four defendants. Within 20 days after receiving notice from the U.S. Marshal showing whether service has been accomplished, Sykes must file a notice with the court identifying whether the defendants were served.

_____
U.S. District Judge Jennifer A. Dorsey
September 26, 2023