
# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Mark Clifford Sykes,<br><br>    Plaintiff<br><br>v.<br><br>The City of Henderson, et al.,<br><br>    Defendants | Case No.: 2:22-cv-00956-JAD-EJY<br><br>**Order Granting in Part Defendants'<br>Motion to Dismiss**<br><br>[ECF No. 18] |

    This action arises out of Plaintiff Mark Sykes's 2021 obstructing-a-police-investigation arrest, prosecution, and acquittal.  He sues the "City of Henderson (A.K.A.) Henderson Police Department," two of its officers, and one sergeant for false arrest, unreasonable search and seizure, racial profiling, conspiracy, and negligent infliction of emotional distress (NIED).  The defendants move to dismiss all of his claims, arguing that there was probable cause for his arrest; he fails to state a plausible claim under the Equal Protection Clause, 42 U.S.C. §§ 1985 and 1986, and Nevada case law; and the Henderson Police Department (HPD) is not a cognizable legal entity capable of being sued.  Sykes responds that his outstanding warrant did not justify his arrest; he states plausible claims for racial discrimination, conspiracy, and NIED; and he is truly suing the City of Henderson (the caption just needs to be corrected to reflect that).  Because I find that Sykes's amended complaint contains sufficient factual allegations to state claims under most of his theories, I grant the defendants' motion to dismiss only Sykes's conspiracy claim under § 1985(1), liberally construe his claims against HPD as ones against the City of Henderson, and deny their motion in all other respects.

**Background**[1]

In June 2021, HPD Officers C. Watts and B. Shaffer responded to a robbery in Morrell Park involving a white woman, a white man, a Hispanic man, and a stolen blue Honda.[2] As the officers pulled into the parking lot, they spotted Mark Sykes and Deerick Love—two black men—sitting in lawn chairs next to their cars, a gray Lexis and a BMW.[3] The officers shone their patrol-car lights on the two men and told them to put their hands up and walk towards the light.[4]

Officer Watts questioned Sykes about the robbery, and Sykes told him that he had witnessed an altercation two parking stalls over.[5] He gave Officer Watts his first and last name and date of birth and identified the gray Lexis as his car.[6] Officer Shaffer then approached and began badgering Sykes about illegal tags on the BMW.[7] Sykes could sense that the interaction was going poorly and asked the officers to call their watch commander.[8]

Sergeant K. Abernathy soon arrived, and the officers ran a warrant check on Sykes.[9] They discovered an active local warrant for contempt of court, and Sergeant Abernathy asked Sykes for his middle name to confirm that the warrant was indeed for him.[10] Sykes did not

---

[1] These facts are taken from Sykes's amended complaint [ECF No. 6] and are not intended as findings of fact.
[2] ECF No. 6 at 4, ¶¶ 12–13.
[3] *Id.* at 4, ¶¶ 12–14, 22.
[4] *Id.* at 4.
[5] *Id.* at 4–5.
[6] *Id.* at 5.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 36.
[10] *Id.* at 5, 36.

provide his middle name, instead suggesting that there were documents in his car that would prove his identity.[11]  Sergeant Abernathy then arrested Sykes for obstructing a police officer's investigation and towed his car.[12]  A jury trial was held a month later, and Sykes was found not guilty of that charge.[13]

Sykes sued.[14]  Two lengthy rounds of screening has left Sykes with claims for false arrest, unreasonable search and seizure, racial-profiling, conspiracy, and NIED.[15]  The defendants now move to dismiss all of them under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

Federal pleading standards require a plaintiff to include in his complaint enough factual detail to "state a claim to relief that is plausible on its face."[16]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[17] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under some viable legal theory."[18]  A complaint that fails to meet this standard must be dismissed.[19]

---

[11] *Id.* at 5.

[12] *Id.* at 5–6, 30.

[13] *Id.* at 6, 30–31.

[14] *See* ECF No. 1 (complaint); ECF No. 6 (amended complaint).

[15] *See* ECF No. 5 (screening complaint and granting leave to amend); ECF No. 10 (adopting report and recommendation on amended complaint in part).

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[19] *Id.* at 570.

Of course, federal courts must also interpret all pleadings "so as to do justice,"[20] and the Supreme Court has consistently held that pro se pleadings like Sykes's are "to be liberally construed."[21] So a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim [that] would entitle [them] to relief."[22] If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[23]

**A.    Sykes pleads enough factual detail to state a plausible § 1983 claim for false arrest.**

The defendants move to dismiss Sykes's Fourth Amendment claim for false arrest, arguing that his arrest was based on probable cause because he had an outstanding warrant for contempt of court.[24] They contend that, although he was officially arrested for obstructing a police officer, and that charge was eventually dropped, that development does not undermine the initial finding of probable cause that was based on the warrant.[25] Sykes counters that the officers were in the park to investigate a robbery, so they could not base the probable cause for his arrest

---

[20] Fed. R. Civ. P. 8(e).

[21] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).

[22] *Id.* (cleaned up).

[23] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

[24] ECF No. 18 at 3, 6–7. The defendants contend that Sykes's unreasonable-search-and-seizure claims should also be dismissed, but they provide no analysis to substantiate their argument. *Id.* at 6–8. Because they do not substantively address the merits of dismissal for those claims, neither do I.

[25] *Id.* at 7–8.

on an outstanding warrant.[26] He contends that because they never showed him the warrant or "confirmed" it before his arrest, they violated his constitutional rights.[27]

To state a § 1983 claim for false arrest and detention, a plaintiff must allege true facts to show that there was no probable cause to arrest him.[28] "[P]robable cause exists when the arresting officer has facts within his knowledge based on trustworthy information [that] would warrant a prudent man to believe that an offense has been committed and that the suspect committed it."[29] The "relevant inquiry is what the agents knew, collectively, at the time they arrested" the plaintiff.[30] Probable cause requires only a "fair probability" that a crime occurred.[31]

### 1. *Sykes has pled a plausible claim based on the timing of the officers' discovery of the warrant.*

The defendants first argue that Sykes's "arrest was with probable cause solely based upon the bench warrant."[32] The Ninth Circuit has held that suspicionless searches and seizures cannot be retroactively justified by an outstanding warrant.[33] In *Moreno v. Baca* for example, Moreno was walking down the sidewalk when a patrol car spotted him and pulled up onto the curb to block his path.[34] The officers interrogated Moreno, patted him down, emptied his pockets, and

---

[26] ECF No. 23 at 7, 9.
[27] *Id.* at 9.
[28] *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).
[29] *United States v. Jennings*, 468 F.2d 111, 114 (9th Cir. 1972) (cleaned up).
[30] *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005).
[31] *United States. v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002).
[32] ECF No. 18 at 7.
[33] *Moreno v. Baca*, 431 F.3d 633, 640–41 (9th Cir. 2005).
[34] *Id.* at 636.

locked him in the backseat of the patrol car.[35]  The officers then searched Moreno's name and found that he was a parolee with an outstanding warrant for his arrest.[36]  The officers argued that the search and seizure were justified by Moreno's parole status and outstanding warrant.[37]  But the officers were not aware of those details at the time of the seizure, and they had no grounds to suspect that Moreno was a parolee and had a warrant out for his arrest when they initially stopped him.[38]  The court noted that the legality of Moreno's search and seizure needed to be predicated on what the officers knew at the time they detained him.  It found that merely walking in a high-crime area and looking "startled" did not reach the level of suspicion necessary to suspect Moreno of criminal activity,[39] and a belated discovery of a warrant did not render that stop constitutional.

Sykes has pled enough facts to state a false-arrest claim based on the timing of the discovery of the warrant.  He alleges that he bore no resemblance to the robbery suspects: the officers were searching for a white woman, a white man, and a Hispanic man suspected of stealing a blue Honda, and Sykes was a black man sitting next to a gray Lexis and a BMW.[40]  He also alleges that the officers were told outright by another witness in the park that Sykes was not involved in the incident.[41]  The defendants counter that they were searching for at least one armed suspect and happened upon Sykes "crouching" behind his car "near the scene of the

---

[35] *Id.*
[36] *Id.*
[37] *Id.* at 638.
[38] *Id.* at 640–41.
[39] *Id.* at 636–37, 641.
[40] ECF No. 6 at 7–8.
[41] *Id.* at 9.

attack,"[42] but Sykes avers that he and Mr. Love were merely sitting in lawn chairs behind their two cars, "not concealing themselves from the officers."[43] The facts as Sykes alleges them (and which I must accept as true at this stage of the proceedings) do not support a finding of reasonable suspicion necessary to justify his stop. And without a constitutional basis to stop Sykes, the defendants would not be able to rely on the later discovery of an outstanding warrant to justify his arrest.

### 2. *Sykes's refusal to provide his middle name to the officers does not compel dismissal of his false-arrest claim as alleged.*

The defendants also argue that they had probable cause to arrest Sykes because he obstructed their official duties when he refused to provide his middle name.[44] Nevada Revised Statute § 197.190 punishes individuals who "willfully hinder, delay, or obstruct any public officer in the discharge of his official powers or duties."[45] For an individual to violate this statute by refusing to identify himself, the officer's "request for identification [must be] reasonably related to the circumstances justifying the stop."[46] The Supreme Court of the United States has upheld the constitutionality of stop-and-identify statutes only if the underlying stop was "justified at its inception" by reasonable suspicion that the individual committed a crime.[47]

But as discussed supra, Sykes includes enough facts to suggest that the stop was not grounded in suspicion that he committed a crime. And the officers could not order Sykes to

---

[42] ECF No. 18 at 6.
[43] ECF No. 23 at 5.
[44] ECF No. 18 at 7.
[45] Nev. Rev. Stat. § 197.190 (cleaned up).
[46] *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 188 (2004).
[47] *Id.* at 188–189.

identify himself absent particularized suspicion that he had engaged in criminal activity.[48]  So because Sykes has alleged facts showing that the demand for him to identify himself was not related to a lawful stop justified by reasonable suspicion,[49] he has stated a false-arrest claim sufficient to overcome the defendants' FRCP 12(b)(6) challenge, and I deny their motion to dismiss this claim.

**B.  Sykes pleads enough factual detail to support an equal-protection claim for racial profiling.**

In his Fourteenth Amendment equal-protection claim under 42 U.S.C. § 1983, Sykes claims illegal racial profiling based on the allegation that there were multiple people at the park at the time of the incident yet only the black males were treated as suspects despite their racial dissimilarity to the robbery suspects.[50]  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."[51]  To prevail on a claim for racial profiling in violation of the Equal Protection Clause, a plaintiff must demonstrate that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."[52]  "Intentional

---

[48] *United States v. Landeros*, 913 F.3d 862, 869–70 (9th Cir. 2019) (finding that "law enforcement may not require a person to furnish identification if [they are] not reasonably suspected of any criminal conduct") (citing *Brown v. Texas*, 443 U.S. 47, 52–53 (1979)).
[49] *Id.* at 870.
[50] ECF No. 23 at 5.
[51] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (cleaned up).
[52] *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005).

discrimination means that a defendant acted at least in part because of a plaintiff's protected status."[53]

The defendants move to dismiss this claim, arguing that Sykes hasn't shown disparate treatment.[54] They cite *Thornton v. City of St. Helens*,[55] contending that Sykes must demonstrate "that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against" him based on his race.[56] And because he doesn't allege facts showing that the officers would have approached anyone else in the park differently or that they intended to discriminate against him, Sykes cannot state a plausible racial-profiling claim.[57]

But the defendants misinterpret the holding in *Thornton*. In that case, a Native American wrecking-yard owner sued an Oregon city manager and city planner for delaying the yard's license renewal due to racial animus.[58] The court held that the owner could not make out a claim for discrimination because she failed to provide evidence that the defendants intended to discriminate against her based on her Native American heritage.[59] "As a fallback classification," the owner dispensed with her protected-class status and attempted to group herself with other wrecking yards, establishing herself as a class of one.[60] And as a class of one, "she bears the

---

[53] *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994)).
[54] ECF No. 18 at 6.
[55] *Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005).
[56] ECF No. 18 at 6.
[57] *Id.*
[58] *Thornton*, 425 F.3d at 1161–63.
[59] *Id.* at 1166–67.
[60] *Id.* at 1167.

burden of proving that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[61] The *Thornton* court distinguished between the two equal-protection theories.[62] It did not hold that a racial-profiling claim requires proof of disparate treatment.[63]

Sykes makes factual allegations that support his assertion that the officers acted with a discriminatory intent. As a black man, Sykes is a member of a protected class.[64] He alleges that there was a white woman in the park who witnessed the robbery, and the officers approached her as a witness.[65] He claims that, although he was a witness to the robbery as well, he was immediately assumed to be a suspect because of his race.[66] He alleges that the white witness in fact told the officers that Sykes was not involved in the robbery, but the officers still treated him as a criminal. Although disparate treatment is not the test for a racial-profiling claim, the officers' disparate treatment of a similarly situated white witness supports the inference that the officers intended to discriminate against Sykes because of his race.[67] At this preliminary stage of litigation, that's enough.

---

[61] *Id.* (quoting *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir.2002)).

[62] *Id.* at 1167–68.

[63] *See also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.") (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)) (cleaned up).

[64] *Thornton*, 425 F.3d at 1166 ("The first step in equal[-]protection analysis is to identify the defendant['s] asserted classification of groups.") (cleaned up); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race.").

[65] ECF No. 6 at ¶ 16.

[66] *Id.*

[67] *See Whren*, 517 U.S. at 813 (holding that, unlike Fourth Amendment false-arrest or unreasonable-search-and-seizure claims, the subjective intent of the officers is critical to

**C.     Sykes has pled a cognizable theory of conspiracy under §§ 1985(3) and 1986, but not under § 1985(1).**

The defendants move to dismiss Sykes's § 1986 conspiracy claim, arguing that the complaint is devoid of specific facts that show the existence of a conspiracy.[68] They also note that the court permitted Sykes's § 1986 claim to move forward in a previous order but did not mention his § 1985 claim, and dismissal of a § 1985 claim requires the dismissal of a companion § 1986 claim.[69] Sykes contends that the officers' narratives show that they communicated with each other and thus conspired together.[70] He also avers that the court did not dismiss his § 1985 claim because the magistrate judge agreed that it was sufficiently plead.[71]

Title 42, Section 1985(3) provides a cause of action for a conspiracy to deny anyone of his civil rights and requires a showing of some racial or class-based discrimination.[72] "To bring a cause of action successfully under § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his

---

establishing their discriminatory intent); *Vill. of Arlington Heights*, 429 U.S. at 266 ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.").

[68] ECF No. 18 at 8–12.

[69] *Id.* at 8. The court inadvertently omitted Sykes's § 1985 claim from its prior order, but it did not dismiss it. Although the defendants move only to dismiss Sykes's § 1986 claim, they do argue that Sykes failed to provide enough factual detail to establish a conspiracy under § 1985. Because they dispute the § 1985 claim on its merits, I construe their motion to dismiss all of Sykes's conspiracy claims under §§ 1985(1) and (3) and 1986.

[70] ECF No. 23 at 12.

[71] *Id.* at 11–12.

[72] *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000).

11

person or property or deprived of any right or privilege of a citizen of the United States."[73] A claim under this statute must accompany a deprivation of rights under § 1983.[74] Section 1986 creates a cause of action against anyone who fails to prevent a conspiracy to discriminate based on race[75]; such a claim can survive only if it accompanies a valid claim under section 1985.[76] "A mere allegation of conspiracy without factual specificity is insufficient."[77]

Sykes provides enough factual details to establish a conspiracy claim under § 1985(3). He alleges that when Sergeant Abernathy arrived at the park, the sergeant first spoke with Officers Watts and Shaffer before approaching him.[78] Sykes alleges that, during this huddle, the three defendants concocted a story about a second 911 call that implicated a gray car in the robbery.[79] But when Sykes later requested a copy of the 911 calls related to this incident, dispatch informed him that there was only one 911 call, and it only mentioned a blue Honda.[80] These allegations are sufficient to support the inference that the defendants conspired together to harass Sykes. And because he has already pled a valid § 1983 cause of action for racial discrimination, he has sufficiently alleged that the defendants were motivated by racial animus.

---

[73] *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

[74] *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1177 (9th Cir. 1989), *cert. denied*, 493 U.S. 817 (1989) (noting that it's well-stablished that there can be no § 1985 claim in the absence of a § 1983 claim); *see also Thornton*, 425 F.3d at 1168 ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.") (citation omitted).

[75] *Karim-Panahi*, 839 F.2d at 626.

[76] *Id.*

[77] *Id.*

[78] ECF No. 6 at 5.

[79] *Id.* at ¶ 13.

[80] *Id.* at ¶¶ 13–14.

The facts as Sykes alleges them also suggest that the defendants knew about the conspiracy but did nothing to stop it, so he has pled viable conspiracy claims under both §§ 1985(3) and 1986.

Sykes also appears to assert a claim under § 1985(1). That subsection protects people who "accept[] or hold[] any office, trust, or place of confidence under the United States" against conspiracies to threaten, intimidate, or prevent them from holding office.[81] "[T]he statute's protections extend exclusively to the benefit of federal officers."[82] Sykes has not alleged that he is an injured federal officer. So to the extent that he brings a cause of action under § 1985(1), it is dismissed because he does not allege facts showing that he is a member of a class protected by the statute.

### D. Sykes has pled a plausible NIED claim.

The defendants move to dismiss Sykes's NIED claim, arguing that NIED "may only be brought by a bystander who witnesses" an accident involving a close family member, and Sykes does not allege emotional distress caused by such an occurrence.[83] They contend that the magistrate judge failed to rely on the proper NIED elements laid out in the Supreme Court of Nevada's opinion in *Grotts v. Zahner*[84] when she recommended that Sykes's claim proceed.[85]

The defendants are mistaken on the law. Nevada recognizes "an NIED claim by a direct victim," which "has the same elements as an [IIED] claim, except that the plaintiff need only

---

[81] 42 U.S.C. § 1985(1).
[82] *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981).
[83] ECF No. 18 at 12.
[84] *Grotts v. Zahner*, 989 P.2d 415, 415 (Nev. 1999).
[85] *Id.* at 12–13.

show that the acts causing distress were committed negligently."[86]  The *Grotts* decision discusses who has standing as an accident bystander to bring an emotional-distress claim, holding that only a bystander related to the victim by blood or marriage may seek these damages[87]; it does not stand for the proposition that only accident bystanders may bring NIED claims.  So I deny the defendants' motion to dismiss Sykes's NIED claim.

**E.     The court construes Sykes's complaint as one against the City of Henderson.**

Finally, the defendants argue that the HPD should be dismissed from this case because it's not a "cognizable legal entity" capable of being sued.[88]  Sykes responds that he is actually suing the City of Henderson, "who is also known as the Henderson Police Department."[89]  A public agency is not a person or entity subject to suit unless that agency is a separate legal entity.[90]  Under Federal Rule of Civil Procedure 17(b), an entity's capacity to be sued is determined under Nevada state law.[91]  And in Nevada, "[i]n the absence of statutory authorization, a department of the municipal government may not, in the departmental name, sue or be sued."[92]  The proper defendant is instead the municipality itself, not a department of the municipality.

---

[86] *Armstrong v. Reynolds*, 22 F.4th 1058, 1081 (9th Cir. 2022) (citing *Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020)).

[87] *Grotts*, 989 P.2d at 416.

[88] ECF No. 18 at 13.

[89] ECF No. 23 at 14.

[90] *Harvey v. Estes*, 65 F.3d 784, 791–92 (9th Cir.1995).

[91] Fed. R. Civ. Proc. 17(b); *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001) (finding that a police department's "capacity to be sued in federal court" is determined by state law") (citing *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986)).

[92] *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev.1996) (citation omitted).

Sykes's first-amended complaint lists the "City of Henderson (A.K.A.) Henderson Police Department of Clark County Nevada" as a defendant.[93] Although the HPD is a municipal department of the City of Henderson and not a separate legal entity capable of being sued,[94] the Ninth Circuit permits courts to substitute a city or county into the case in lieu of an improperly named department.[95] Sykes already names the City, albeit in conjunction with HPD. So I liberally construe his pleading as targeting the City of Henderson only and not the HPD.

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motion to dismiss [**ECF No. 18**] is **GRANTED in part**. Plaintiff Mark Sykes's conspiracy claim under 42 U.S.C. § 1985(1) is dismissed with prejudice as amendment would be futile. This case proceeds against the City of Henderson, C. Watts, B. Shaffer, and Sergeant K. Abernathy on Sykes's Fourth Amendment claims for false arrest and unreasonable search and seizure, his 42 U.S.C. §§ 1985(3) and 1986 claims for conspiracy, his equal-protection claim for racial discrimination, and his NIED claim.

_____
U.S. District Judge Jennifer A. Dorsey
June 28, 2024

---

[93] ECF No. 6 at 1.

[94] *Wayment*, 912 P.2d at 819 (holding that Washoe County District Attorney's Office "is not a suable entity because it is a department of Washoe County, not a political subdivision"); *see also Thornal v. Pitts*, 2019 WL 6878858, at *2 (D. Nev. Dec. 17, 2019) (determining that the Elko County Sheriff's Office is not a political subdivision that can be sued under Nevada law); *Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 939 (D. Nev. 2012) (noting that Boulder City Police Department is not a legal entity capable of being sued); *Ward v. Nevada*, 2010 WL 1633461, at *4 (D. Nev. Feb. 26, 2010), *report and recommendation adopted*, 2010 WL 1640427 (D. Nev. Apr. 21, 2010), *aff'd sub nom. Ward v. Waldron*, 474 F. App'x 598 (9th Cir. 2012) (finding that the Sparks Police Department and Washoe County Sheriff's Detention Facility lack the capacity to be sued).

[95] *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015).