U.S.P.S. TRACKING MAIL NO. 9405530109355220688467

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA
## SOUTHERN DIVISION

| | |
|---|---|
| Mark Clifford Sykes,<br><br>　　　　Plaintiff(s),<br><br>v.<br><br>CITY OF HENDERSON, OFFICER C. WATTS, OFFICER B. SHAFFER, SERGEANT K. ABERNATHY, et al.<br><br>　　　　Defendant(s). | Case No.: 2:22-cv-00956-JAD-EJY<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Mark Clifford Sykes, Sui Juris, respectfully presents this Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF No. 50). This response is supported by Plaintiff's **First Amended Verified Complaint**, and therefore serves as **competent affidavit evidence** pursuant to **Fed. R. Civ. P. 56(c)**. All exhibits included on flash drive.

Defendants' motion fails to resolve multiple genuine issues of material fact which a jury must determine. These include the unlawful arrest, unconstitutional search and seizure, racial discrimination, and the prolonged investigatory detention without probable cause. Plaintiff reiterates and incorporates by reference in their entirety his entire amended complaint and the findings of the court in their 6-28-2024 Order Granting in Part Defendants' Motion to Dismiss (see…ECF No. 32) in support of this opposition.

## II. LEGAL STANDARD

Summary judgment is only proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a);** *Anderson*

*v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986)**. Disputes must be resolved by a jury where competing evidence exists.

A **verified complaint**, may serve as evidence in opposition to summary judgment. *Hall v. Bellmon,* **935 F.2d 1106, 1111 (10th Cir. 1991)**.

### III.   STATEMENT OF FACTS

Plaintiff was peacefully parked at a public location with Mr. Love when approached by officers with emergency lights on, spotlights on and weapons drawn pointed at plaintiff and Mr. Love (see…Exhibit E-1, Shaffer vest cam video). Officers cited dispatch reports suggesting involvement in a robbery. However, there is not witness statement supporting these allegations as required by their own investigation policies (see…Exhibit E-2, DP400 - HPD Policy Preliminary Investigations). Defendants own Preliminary Investigation policy does not give rise to defendant conducting a person search in their systems when investigating a robbery as a "field unit" (see…section 400.3 of Exhibit E-2). They intentionally operated outside of the scope of their robbery investigation when it came to the black individuals at the park, further evidencing a lack of probable cause, discrimination, harassment as the videos show that the other witnesses where only questions about the robbery (see…Exhibit E-3, E-3.1, E-4, E-4.1, witness videos and Statements) and to provide statements as required by the **DP400 - HPD Policy Preliminary Investigations**, no background checks were conducted on individuals who were not black, that their investigation was racial based. In **vest cam video E-1**, Defendant alleged that they can run vehicle tags however has not ran the other individual vehicle tags that were also at the park, only the black individual putting one of the black males in handcuffs while detaining the plaintiff being aggressive in conversation again showing racially based investigation (see…Exhibit E-1, starting at 9:42).

There is no second call that exist otherwise it would have been produced in discovery as requested as these calls are recorded evidenced by the dispatch call to by the victim (see…Exhibit E-5 - victim call to dispatch – in Spanish). During the victim dispatch call, the suspects were described as being white, Hispanic, and white by the victim whose vehicle was stolen, non-matching Plaintiff who is a black male. The officers had knowledge of this information before approaching the plaintiff regardless of the non-existent second call to dispatch. Supporting that the black males at the scene were targeted. The party to the robbery statements outweigh any alleged witness who appears to be non-existent, not even located at Morell part at during the investigation as no statement exist from this alleged witness.

Further, Exhibit E-5 evidences that dispatch was on the call with the victim up until the officers arrived therefore there is no way that the defendants could not have known that the plaintiff was not a suspect when he was clearly a witness. There was no reason for the plaintiff to be treated as if he was the one who robbed someone of their vehicle. This is impossible as in a robbery such as theft of a vehicle, the robber would not still be at the scene of the crime where the robbery took place sitting in a chair in the back of their own vehicle they traveled at the park in, that defeats the purpose of a vehicle robbery. It is literally impossible to steal a vehicle and that vehicle not be at the scene of the crime where it is alleged that the vehicle was stolen from. The defendants had all the resources at the time of the investigation to know that the suspects were not black, and that plaintiff was a witness before arrival.

Plaintiff gave his **first and last name**, yet was arrested for allegedly failing to provide his **middle name**, purportedly necessary to confirm an outstanding warrant. No such warrant was presented at the time of arrest when asked multiple times before the arrest, and Plaintiff was later **acquitted** of obstruction charges and found not guilty on 9-30-2021 (see…**Defendants Exhibit**

**M, and/or plaintiff's Exhibit A filed with his complaint showing judgment finding plaintiff not guilty**). Based on defendants **Exhibit M** (Henderson Municipal Court Docket Sheet), there was only 1 charge against the plaintiff which he was found not guilty of.

Discovery revealed **no second dispatch call** tying Plaintiff or his vehicle to any robbery of a vehicle. Plaintiff filed a FOIA request, confirming only one call existed before he brought this lawsuit (see…Exhibit E-6, FOIA request) to which the only call that existed for that specific day at Morell park was presented to the plaintiff (see…Exhibit E-5, which is the same as dispatch call produced to plaintiff with his FOIA request). Moreover, **white individuals at the scene** talking to the officer were not detained or background-checked, despite violations of law which all the officer did was notify this individual and left right after showing different treatment of other ethnicities that were not black, showing privileges (see…Exhibit E-7, open container, Officer Danny vest cam video of witness Jamia Cruz). Plaintiff and Mr. Love were treated as criminal suspects solely based on race and false allegations alleged to be by witnesses that do not exist as no statements for these witnesses exist, no vest cams with any investigative conversations with these alleged witnesses by officers exist as all vest cam video's and witness statements for the referenced incident at Morell Park were produced as requested in discovery and appear to be a fabricated lie by the field units which all officers conspired together to form to investigate and harass the black individuals at the park with the Henderson office is known for as evidenced by their own officers who produced affidavits supporting their conduct with African American individuals (black people), see…Exhibit E-8, Affidavits by Hector Villa and Xavier Johnson, former African American officers within Henderson Police Department who witnessed such actions by the officers of the HPD including but not limited to Kevin Abernathy.

**IV.   ARGUMENT**

### A. PLAINTIFF'S VERIFIED COMPLAINT CONSTITUTES COMPETENT EVIDENCE

Plaintiff's verified complaint satisfies evidentiary requirements and presents material factual disputes, rebutting the assertions made in Defendants' motion.

### B. PROBABLE CAUSE TO ARREST PLAINTIFF DID NOT EXIST

No probable cause existed to justify Plaintiff's arrest. Officers arrested Plaintiff based on his failure to provide a middle name, not because of any confirmed warrant as by the defend Shaffers own words in its statement that the warrant was later confirmed (see…Exhibit B, Brian Shaffer police report documenting "later confirmed"). The defendants purpose was to investigate a robbery, there could not have been any reasonable suspicion that the plaintiff may have an outstanding warrant at this time. The trial court confirmed that Plaintiff complied with the law by giving his **first and last name only which is support by plaintiff not being found guilty of obstruction** (see…Exhibit A filed with plaintiff's amended complaint). Prolonging a detention beyond its purpose without independent reasonable suspicion violates the Fourth Amendment.

***Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177** (2004): An individual is only required to provide a name, not full identifying details, absent specific law (see…Exhibit A, found not guilty of the act) as it has already been decided by the trial court that plaintiff was only required to give his first and last name which he did and was found not guilty of obstruction, the failure to give his middle name, dismissing the matter evidencing an unlawful arrest. Further, the Fifth Amendment states that "[n]o person … shall be compelled in any criminal case to be a witness against himself." To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled. See…***United States v. Hubbell,* 530 U. S. 27, 34–38 (2000)**. The Hiibel and Hubbell case both support that plaintiff has a fifth amendment claim as

well as originally claimed in his original complaint as there is sufficient evidence of a reasonable belief that the evidence, giving his full name would be used against him in a incriminating matter such as an arrest which is an immediate danger.

The defendants originally argued that, "Plaintiff was officially arrested for obstructing a police officer (**see…ECF No. 32 pg. 4 at 12**). The defendants now argue that Sykes's "arrest was with probable cause solely based upon the bench warrant." This argument also fails because as explained by this court, "The Ninth Circuit has held that suspicionless searches and seizures cannot be retroactively justified by an outstanding warrant citing *Moreno v. Baca*, **431 F.3d 633, 640–41 (9th Cir. 2005).** The facts presented to the court by the plaintiff has not changed therefore are reinstated and incorporated by reference nor have the allegations by the defendant as presented in their motion for summary judgment therefore do not support a finding of reasonable suspicion necessary to justify his stop or arrest as defendants had no knowledge of a warrant at the time of the stop nor at the time of the arrest. The defendants cannot rely on the later discovery of an outstanding warrant to justify plaintiff's arrest. (see…ECF No. 32 at 4-8, Sections A, A(1) and A(2) which is hereby incorporated by reference in its entirety). The defendants have not provided any evidence that they were at the stop to investigate a warrant, nor that there was reasonable suspicion of an outstanding warrant. Defendants have already admitted that they were at Morell Park to investigate a robbery further supporting that there is no reasonable suspicion present and that their arrest was unlawful, no probable cause existed for such an investigation.

## C. DEFENDANTS IMPROPERLY EXPANDED THE SCOPE OF THE INVESTIGATION

The original purpose of the stop was to investigate a robbery. Once officers determined that Plaintiff **did not match** the suspect descriptions, that other witnesses such as Heather

informed them that plaintiff was a witness, their decision to prolong the encounter and investigate for **warrants** violated clearly established law. Such an investigation was outside the scope of their stop. Investigating a warrant, searching a vehicle, or checking for licenses would not determine whether or not the plaintiff was involved in the robbery. Such acts are outside of the scope of the stop, the investigation. The U.S. Supreme Court in ***Rodriguez v. United States,* 575 U.S. 348 (2015),** held that the duration of a stop must be limited to the time needed to address the reason for the stop. Officers continued the stop and other investigations outside of the purpose of the stop without any lawful basis after determining that the plaintiff was a witness and not a suspect. The video footage of the stop evidences that the investigation was for other purposes other than whether plaintiff was a suspect or a witness to the robbery unnecessarily extending the stop and investigation. ***United States v. Evans,* 786 F.3d 779 (9th Cir. 2015),** prohibits prolonging a stop to conduct unrelated checks, such as checking for warrants or conducing criminal background check performed on Plaintiff. This was a violation of Plaintiff's Fourth Amendment rights against unreasonable searches and seizures of his person and property. ***Florida v. Royer*, 460 U.S. 491 (1983):** Officers may not expand investigatory detention beyond its original scope without independent grounds.

***United States v. Luckett*, 484 F.2d 89 (9th Cir. 1973):** Warrant checks during unrelated stops require independent justification. Defendants had no reasonable grounds to be suspicious that there might be a warrant outstanding against plaintiff, this continued detention was unreasonable.

### D. UNCONSTITUTIONAL SEARCH AND SEIZURE OF PLAINTIFF'S VEHICLE

Plaintiff's vehicle was searched and towed post-arrest without a warrant or lawful exception. The arrest was not supported by probable cause and renders the search unconstitutional supporting a claim under the fourth and fourteenth amendment. Defendants had

knowledge that plaintiff was a witness well before searching his vehicle and towing it. (see…Exhibit E-9 at 16:58, officer being notified that plaintiff was not involved in the robbery). This video also shows that plaintiff was arrested, put in handcuffs and in a patrol vehicle after being notified that plaintiff was not involved in the robbery. Further supporting that defendants statements that, "Soon afterward, ABERNATHY was notified by the Officers with Eliel that Plaintiff's description was not that of the people who were involved in the robbery are false and incorrect (see…ECF No. 50 pg. 13 at 2-3).

***Arizona v. Gant*, 556 U.S. 332 (2009):** A vehicle search must be supported by exigency, consent, or relation to the arrest.

***Hayes v. Florida*, 470 U.S. 811 (1985):** Moving or searching a person absent probable cause violates the Fourth Amendment.

### E. EVIDENCE OF RACIAL DISCRIMINATION SUPPORTS PLAINTIFF'S EQUAL PROTECTION CLAIM

Only Black individuals were detained, searched, and investigated, despite the presence of white individuals with legal infractions. The victim of the robbery whose car was stolen identified a white male and white female as suspects however the officers did not approach these individuals (see…Exhibit E-5), the white female (witness Heather Tuohy) and white male (Jamia Cruz) in the same manner that they did with the plaintiff and Mr. Love knowing that the white female exited the victim's vehicle and entered into the park (see…Exhibits E-3, E-3.1, and E-5, video and statements of witnesses Heather Tuohy, Jamia Cruz, and victim). Defendants were aware that the plaintiff and Mr. Love were black males upon arrival. It is a fact that the plaintiff was a witness and not a suspect however witness testimony was never taken by the defendants. Plaintiff was assumed at all times to be a suspect based on his color which the officers were well aware of before initial contact. Plaintiff's arguments remain the same which

this court considered in their prior decision which is hereby incorporated by reference in its entirety (see…ECF No. 32 at 8-10, Section B of the court's order). The disparate treatment is direct evidence of discriminatory purpose and effect. Based on the facts of this case, a reasonable jury could determine that in a robbery, the suspects would not be sitting where the crime took place, especially being aware that the robbery was a stolen vehicle which no longer was at the scene of the crime and was a stolen Honda, not BMW or Lexus. That because the defendants were fully aware that the plaintiff and Mr. Love was black males before they were stopped and because of their race, they were approached with extreme force, that they were treated in a discriminatory fashion different from others who was in the same area and approached by the defendants and or the defendant's witnesses/officers. Plaintiff and Mr. Love were just sitting behind their vehicles when met with extreme force instead of being approached as persons with rights and or in a civil manner that do not require guns and lights being reflected on him.

***Whren v. United States*, 517 U.S. 806 (1996)**: Equal protection prohibits race-based enforcement decisions.

### F. FAILURE TO INTERVENE AND CONSPIRACY REMAIN GENUINE ISSUES

Plaintiff's position and arguments have not changed since this courts prior ruling and therefore, plaintiff reiterates and hereby incorporates by reference the courts findings on June 28, 2024 found at **ECF No. 32 at 11-13, section C**. All officers failed to intervene despite observing clearly unlawful and discriminatory conduct. Their unified conduct supports an inference of conspiratorial action and deliberate indifference.

***Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988)**: Failure to intervene where an officer has opportunity and knowledge renders them liable.

### G. PLAINTIFF'S NIED CLAIM IS SUPPORTED BY RECORD EVIDENCE

Plaintiff's position and arguments have not changed since this courts prior ruling and therefore, plaintiff reiterates and hereby incorporates by reference the courts findings on June 28, 2024 found at ECF No. 32 at 13-14, section D. Plaintiff's unlawful detention, arrest, and public mistreatment caused mental anguish. The nature of the misconduct and its racial implications support a finding of emotional harm. The fact that guns were pointed directly at the plaintiff is extremely emotional especially at a time when black males are being shot and killed by officers throughout the states which is well televised.

***Nelson v. City of Las Vegas,* 665 P.2d 1141 (Nev. 1983):** Emotional distress without physical injury is compensable where caused by unlawful acts.

### H. "REASONABLE SUSPICION" IS NOT A CONSTITUTIONAL STANDARD AND WAS PRETEXTUAL

The Defendants' reference to "reasonable suspicion" is unfounded in law. The United States Constitution contains no provision authorizing "reasonable suspicion" as a standard for detention or arrest. It is a judicial construct, not grounded in Article I or any Congressional enactment.

Even if it were valid, Defendants lacked a factual basis to suspect Plaintiff or Mr. Love had outstanding warrants. No behavior, statements, or evidence supported such suspicion. Plaintiff explained at the time he was detained that he was a witness and described the robbery to the officers showing cooperation to investigate the robbery which was the purpose of the field officer's investigation. Anything outside of that, plaintiff was not required as a matter of law to provide exercising his fifth amendment rights (see…section B, PROBABLE CAUSE TO ARREST PLAINTIFF DID NOT EXIST). The selective targeting of Black individuals for warrant checks, while white individuals were neither questioned nor background-checked,

constitutes racial profiling and an Equal Protection violation.

Further, there is no dispatch record, eyewitness statement, or vehicle identification connecting Plaintiff or Mr. Love to the robbery. Both remained at the scene, calmly parked and stationary siting behind their vehicles indicating no attempt to flee nor harm anyone. In fact, in the case of an actual robbery, suspects would not remain at the scene post-incident, confirming that Plaintiff was not involved. Even if he were, which the evidence shows that he wasn't and therefore expressly denies, the absence of flight or hostility negates any need for drawn weapons or heightened force. The video shows that guns were drawn on the plaintiff and Mr. Love showing extreme and outrageous force, reckless disregard for causing emotional distress (see…Exhibit E-1).

This context proves the use of force was grossly excessive, detached from any credible threat, and carried out solely on the basis of race as the race was known before contact. The prolonged encounter, unsupported by fact or law, was a constitutional violation, not a valid investigatory stop resulting in arrest.

***Rodriguez v. United States*, 575 U.S. 348 (2015); *Royer*, 460 U.S. at 500:** Detention must match the reason for the stop. When that reason disappears, the detention must end. After it was determined that plaintiff was a witness and not a suspect, he should have been released form detention.

I. **RESPONSE TO DEFENDANTS' REMAINING ARGUMENTS**

1. **QUALIFIED IMMUNITY DOES NOT SHIELD DEFENDANTS FROM LIABILITY**

The doctrine of qualified immunity does not protect officers who violate clearly established constitutional rights. Plaintiff's rights under the **Fourth** and **Fourteenth Amendments** were clearly established at the time of the incident. These include:

- The right not to be detained or arrested without probable cause
- The right to equal protection under the law, free from racial discrimination
- The right to be free from unlawful searches and seizures

See…*Saucier v. Katz,* **533 U.S. 194 (2001)**: Qualified immunity is unavailable where the facts taken in the light most favorable to the plaintiff show that the officer violated a clearly established right.

See…also *Hope v. Pelzer,* **536 U.S. 730 (2002)**: General constitutional principles can give officers fair warning that their conduct is unlawful.

The right to be free from unreasonable seizures and arrests without probable cause was clearly established at the time of the incident. The recent case of *Doe v. Taylor Independent School District,* **15 F.4th 261 (5th Cir. 2021),** illustrates that qualified immunity does not apply when an officer acts without lawful authority. This is no authority to investigate the plaintiff's person, to investigate the vehicle or check for warrants demanding full names when plaintiff was a witness and the officers had knowledge that plaintiff was a witness well before the arrest.

Plaintiff's verified complaint, sworn testimony, and the facts viewed most favorably to Plaintiff establish that no reasonable officer could believe such conduct was lawful. Therefore, qualified immunity is inapplicable at this stage.

## 2. PLAINTIFF WAS NOT LAWFULLY ARRESTED

Defendants argue Plaintiff was arrested based on dispatch-confirmed warrant later confirmed. However, as established:

- The reason for the stop was to investigate a robbery;
- The defendants had no reasonable suspicion that the plaintiff had an outstanding warrant before the stop;
- Dispatch cannot lawfully confirm warrants;
- No physical or electronic warrant was presented to Plaintiff;
- Arrest occurred **before** any warrant could have been confirmed and after notified that plaintiff was a witness and not a suspect;
- Plaintiff was arrested **specifically** for refusing to give his middle name;

- Trial evidence showed Plaintiff complied with ID requirements by giving only his first and last name and found not guilty of the charge of obstruction for not giving his middle name;
- Plaintiff was **acquitted** of all charges.

See…*Beck v. Ohio, 379 U.S. 89 (1964)*: Probable cause must exist at the moment of arrest, not retroactively.

Therefore, the claim that the arrest was lawful is contradicted by both testimony and judicial findings.

### 3. PLAINTIFF HAS PRESENTED FACTUAL EVIDENCE OF RACIAL DISCRIMINATION

Defendants assert there is no racial motive. However, Plaintiff has presented:

- Differential treatment of Black and white individuals at the scene; for example, the white male witness Jamia Cruz had and open container and was only notified of the unlawful act but was never arrested, handcuffed, nor any background checks were conducted (see…Exhibit E-7);

- Witnesses was only required to give first and last names, no background checks were conducted on any witnesses only on the black males (see…Exhibit E-3.1 and E-7);

- Only Black individuals were treated as criminals in front of everyone at the park, handcuffed, subjected to unlawful searches and seizures of their person and vehicles as plaintiff vehicle was unlawfully towed at a public park;

- Officers approached the black males, the plaintiff in this case aggressively with emergency lights, weapons drawn and pointed directly at the plaintiff despite having knowledge that the robbery had already taken place evidenced by the call of the victim who has firsthand knowledge of every incident as a party to the robbery which outweigh and alleged witnesses viewing at a far, the robbers fled the scene hence the purpose of a robbery and no aggression or resistance by plaintiff;

- The officers did not start to reasonably investigation whether or not the plaintiff and Mr. Love were the parties to the robbery until about 15 minutes into the investigation which defeated the purpose of their stop (see…Exhibit 3 produced by the defendants at about 15 min. 20 second of the video to 18 minutes);

- Although defendants had knowledge that plaintiff was not white or Hispanic and therefore could not be involved in the robbery support by the witness call to dispatch (see…Exhibit E-5), the defendant's had sufficient knowledge that plaintiff was not involved in the robbery but indeed are just witnesses (see...Exhibit E-9 at 16:58,

Abernathy vest cam, Exhibit E-13 at 11:25) however still treated as if they are criminals and defendants started to investigation outside of the purpose of their stop, the robbery instead of releasing the plaintiff thereby prolonging the stop defaming plaintiff's character calling him a sovereign citizen (Exhibit E-13 at 11:58) to conduct another investigation outside of the purpose of investigating a robbery.

- Exhibits E-7, Exhibit E-10 and E-10.1) vest cam video proves that plaintiff was arrested for obstruction of justice, at the time of the arrest, the alleged warrant was not confirmed and that plaintiff was arrested after confirming that plaintiff was not involved in the robbery and was indeed a witness.

- Exhibit E-11, dash cam showing treatment of Mr. Love as a suspect and handcuffed without information confirming is was a suspect.

- Exhibits E-12, E-12.1 and E14 video and audio showing unlawful continuation of investigation even after knowledge that plaintiff and Mr. Love, the other black male were witnesses and not suspects.

- Notified plaintiff that they are only investigating whether or not plaintiff was involved in the robbery, that if they find that he is not, he is free to go (see…Exhibit E-1 at 7:29 into the video)

- Exhibit 1 video shows and proves that anybody that Abernathy thought and labeled as a so called sovereign citizen, he did not like and treats them with a form of hate and hostility evidenced by his actions and demeanor. Defaming plaintiff's character by labeling and characterizing him as some sort of sovereign citizen instead a natural person exercising his rights who informed Abernathy that he is not a sovereign citizen Abernathy treated him as such based on plaintiff's responses (see…Exhibits E-1 at 9:23 into the video plaintiff stating he is not a sovereign citizen, at 10:40 calling plaintiff a sovereign citizen, Exhibit E-9 at 29:40 into the video Showing Abernathy actions toward targeted sovereign citizens mainly African Americans (Black persons), at 36:06 into the video label plaintiff a sovereign citizen and Exhibit E-13 at 11:58 calling plaintiff a sovereign citizen).

- Officer bodycam footage and dispatch records corroborate these disparities.

See…***Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977)**:

Discriminatory purpose can be inferred from disproportionate impact and unequal application of law. See…also ***Whren v. United States*, 517 U.S. 806 (1996)**: Equal protection prohibits race-based enforcement of the law.

## 4. PLAINTIFF'S EMOTIONAL DISTRESS CLAIM IS SUPPORTED BY FACTUAL ALLEGATIONS

Plaintiff was publicly detained, treated as a criminal the entire time without cause in front of everyone at the park (public humiliation), and subjected to racial profiling and or definitely treated differently that other races. The manner of his arrest guns drawn, humiliation, illegal detention is sufficiently outrageous and harmful.

***Nelson v. City of Las Vegas,* 665 P.2d 1141 (Nev. 1983):** Outrageous conduct by police that causes severe emotional distress is actionable.

***Olivero v. Lowe,* 995 P.2d 1023 (Nev. 2000):** Repeated violations of constitutional rights may support an NIED claim.

## 5. MALICIOUS PROSECUTION CLAIM IS LEGALLY AND FACTUALLY SUPPORTED

To prevail on a malicious prosecution, claim under §1983, Plaintiff must show:

1. The defendant caused or continued a prosecution
2. Without probable cause
3. With malice
4. That terminated in Plaintiff's favor
5. Causing damages

See…*Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995)

Here:

- Plaintiff was arrested without probable cause;
- Defendants initiated prosecution based on false pretense (failure to provide a middle name);
- Case was dismissed or ended in acquittal, plaintiff found not guilty;
- Plaintiff suffered damages including vehicle towing, loss of liberty, public humiliation, the ability to be secure in their person upon illegal search and seizure, a search that was outside of the purpose of their investigation.

## 6. PLAINTIFF'S VERIFIED COMPLAINT AND VIDEO EVIDENCE REBUTT DEFENDANTS' ASSERTIONS

Contrary to Defendants' claim, Plaintiff's verified complaint is sworn and is admissible

evidence. Additionally:

- Video footage shows inconsistent treatment of white and Black individuals
- Dispatch records show no link between Plaintiff and robbery suspects
- No second dispatch call exists
- No witness statements, vest cam nor dash cam video exists of defendants investigating any witnesses who have alleged that plaintiff and or Mr. Love was a party to the robbery.
- The CAD report referencing an alleged call by "Jamie" lacks admissible evidence as it is not linked to an officer, not supported by an actual recorded call, lacks a report number, lacks dispatch and arrival information like the other reports, and appears to be fabricated in an attempt to support an alleged call that does not exist otherwise it would be included with the report as the calls are recorded.
- Officer reports confirm the lack of a matching description and confirm Plaintiff's compliance related to the robbery investigation.

## V. JURY-TRIABLE QUESTIONS

1. WHETHER DEFENDANTS HAD PROBABLE CAUSE TO DETAIN OR ARREST PLAINTIFF AT THE TIME OF THE INITIAL STOP.

2. WHETHER PLAINTIFF'S ARREST WAS EFFECTED **BEFORE** ANY WARRANT WAS LAWFULLY CONFIRMED.

3. WHETHER DISPATCH CAN LEGALLY CONFIRM A WARRANT, AND IF NOT, WHETHER THE BASIS FOR THE ARREST WAS UNLAWFUL.

4. WHETHER PLAINTIFF'S FAILURE TO PROVIDE HIS MIDDLE NAME CONSTITUTES OBSTRUCTION OF JUSTICE UNDER LAW.

5. WHETHER OFFICERS USED EXCESSIVE FORCE WHEN APPROACHING PLAINTIFF AND MR. LOVE WITH WEAPONS DRAWN.

6. WHETHER PLAINTIFF AND MR. LOVE WERE SUBJECTED TO A DIFFERENT STANDARD OF TREATMENT BASED ON RACE, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE.

7. WHETHER DEFENDANTS UNLAWFULLY EXPANDED THE SCOPE OF THEIR INVESTIGATION BEYOND THE ROBBERY TO SEARCH FOR WARRANTS WITHOUT INDEPENDENT JUSTIFICATION.

8. WHETHER THE PRESENCE OF PLAINTIFF AND MR. LOVE AT THE SCENE CONTRADICTED ANY CREDIBLE SUSPICION OF ROBBERY PARTICIPATION.

9. WHETHER THE SEARCH AND TOWING OF PLAINTIFF'S VEHICLE WAS UNLAWFUL DUE TO LACK OF WARRANT, CONSENT, OR LEGAL EXCEPTION.

10. WHETHER OFFICERS FAILED TO INTERVENE TO PREVENT CONSTITUTIONAL VIOLATIONS DESPITE HAVING A DUTY TO DO SO.

11. WHETHER DEFENDANTS CONSPIRED TO UNLAWFULLY DETAIN, SEARCH, AND PROSECUTE PLAINTIFF.

12. WHETHER THE INITIATION AND CONTINUATION OF PROSECUTION AGAINST PLAINTIFF CONSTITUTED MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983.

13. WHETHER PLAINTIFF'S ACQUITTAL AND TRIAL OUTCOME ESTABLISHES A FAVORABLE TERMINATION SUFFICIENT TO SUSTAIN A MALICIOUS PROSECUTION CLAIM.

14. WHETHER DEFENDANTS' ACTIONS WERE EXTREME AND OUTRAGEOUS, SUPPORTING A CLAIM FOR EMOTIONAL DISTRESS UNDER NEVADA LAW.

15. WHETHER THE COMBINED ACTIONS OF DEFENDANTS CAUSED PLAINTIFF TO SUFFER EMOTIONAL DISTRESS AND HARM TO DIGNITY, LIBERTY, AND REPUTATION.

16. WHETHER QUALIFIED IMMUNITY PROTECTS DEFENDANTS DESPITE CLEARLY ESTABLISHED RIGHTS BEING VIOLATED.

17. WHETHER PLAINTIFF'S VERIFIED COMPLAINT, VIDEO EVIDENCE, AND OFFICER REPORTS PRESENT SUFFICIENT CONFLICTING FACTS TO REQUIRE A JURY DETERMINATION.

## VI.  CONCLUSION

Every element of Defendants' Motion for Summary Judgment has now been specifically addressed, refuted with admissible evidence, and supported by law. The Court should deny the motion and allow a jury to determine the disputed facts. **Done this 6th day of October, 2025.**

**RESPECTFULLY PRESENTED,**

*/s/ Mark Clifford Sykes*, Sui Juris
All Natural Rights/ Constitutional Rights "explicitly" Reserved and Retained With prejudice
c/o P.O. Box # 674, Russellville, Arkansas Zip Exempt [72811]
email: windsorsykes@yahoo.com
ph. 725-254-0279

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by by notification from the court via the CM/ECF system to all Registered users identified on the service list below:

CITY OF HENDERSON
Nancy D. Savage
Assistant City Attorney
240 Water Street, MSC 144
Henderson, Nevada 89015
*Attorney for Defendants "Henderson Police Department," Officer C. Watts, Officer B. Shaffer, Sgt. K. Abernathy*

Dated this 6th day of October, 2025.

RESPECTFULLY PRESENTED,

Mark Clifford Sykes, Sui Juris
All Natural Rights/ Constitutional Rights "explicitly" Reserved and Retained With prejudice
c/o P.O. Box # 674, Russellville, Arkansas Zip Exempt [72811]
email: windsorsykes@yahoo.com
ph. 725-254-0279