**NICHOLAS G. VASKOV**
City Attorney
Nevada Bar No. 8298
**NANCY D. SAVAGE**
Assistant City Attorney
Nevada Bar No. 392
240 Water Street, MSC 144
Henderson, NV 89015
(702) 267-1200 Telephone
(702) 267-1201 Facsimile
Nancy.Savage@cityofhenderson.com

Attorneys for Defendants
"Henderson Police Department," Officer C. Watts,
Officer B. Shaffer, Sgt. K. Abernathy

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARK CLIFFORD SYKES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HENDERSON (A.K.A.) HENDERSON POLICE DEPARTMENT of CLARK COUNTY NEVADA, OFFICER C. WATTS P#2171, OFFICER B. SHAFFER P#2237, SERGEANT K. ABERNATHY P#1207 in their individual capacity, et. al.,<br><br>Defendants. | CASE NO. 2:22-cv-00956-JAD-EJY<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (ECF 50)** |

Defendants City of Henderson "(A.K.A.) Henderson Police Department," Officer C. Watts, Officer B. Shaffer and Sgt. K. Abernathy, (collectively referred to as "Defendants"), by and through their attorney Nancy D. Savage, Esq., Assistant City Attorney, respectfully submit this Reply in support of their Motion for Summary Judgment (ECF 50).

///

///

///

///

1

This Reply is made and based upon the pleading and papers on file in the above-entitled case, and upon the Points and Authorities herein.

DATED October 23, 2025.

CITY OF HENDERSON

 /s/ Nancy D. Savage
NANCY D. SAVAGE
Nevada State Bar No. 392
240 Water Street, MSC 144
Henderson, NV 89015
(702) 267-1200 Telephone
(702) 267-1201 Facsimile
Nancy.Savage@cityofhenderson.com
Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiff's Opposition to the Defendants' Motion for Summary Judgment reiterates the contention that underlies all of Plaintiff's claims in the above-referenced action, his subjective belief that everything that the Defendants did at Morrell Park in Henderson on June 17, 2021, was motivated by discriminatory intent toward Plaintiff because he is Black. That belief is not supported by the evidence in the case, including the body cam and dash cam videos of the Defendant Officers that were recorded in real time.

Plaintiff, and his companion Mr. Love[1], were not similarly situated to other individuals in the park that night. As a result, they could not be treated as the others in the park that Plaintiff points to for an attempted unfavorable comparison. A violent crime had occurred and HPD officers responded to investigate and to try to apprehend those who were responsible. Plaintiff claims that he was just a

---

[1] Mr. Love is not a party to this action, and was not arrested on the night in issue, as the Plaintiff was. For that reason, Defendants have not and will not address their interactions with Mr. Love, and will remain focused on the Plaintiff. It is acknowledged that Mr. Love was also Black and was also identified as a possible suspect by the third-party caller.

witness and was only approached by Defendant Officers because he is Black. The reality is that Plaintiff was a **suspect**. HPD received a description of Plaintiff's location and possible involvement in the violent crime.

The Defendant officers were dispatched to the parking lot where the robbery occurred and where two Black males who were involved, or possibly involved, were reported by a witness caller, were located. Cars meeting the description of Plaintiff's and Mr. Love's vehicles, were also reported to be involved. When Officers arrived, Plaintiff and Mr. Love appeared to be crouched behind their cars that were backed into parking spots a couple of spots away from where the crime had occurred. Their cars were the only cars in the parking lot. Plaintiff did not come out from behind the cars until ordered to do so by officers over their loudspeakers. Plaintiff has failed to raise any genuine issues of material facts in his opposition. He has, however, attempted to add new and/or dismissed causes of action into his claims.

A drive with the videos from body worn cameras and dash cams of the officers who responded to the area of Morrell Park where the robbery occurred is an exhibit to the Defendants' Motion for Summary Judgment (ECF 50). The drive was manually filed. To assist the Court, the Declaration of Defendants' Counsel attached hereto provides an index of the recordings in which one of the officers interacted with the Plaintiff.

The Plaintiff's claims that remain and are the subject of the Defendants' Motion for Summary Judgment are as follows: Plaintiff's Fourth Amendment claims for false arrest and unreasonable search-and-seizure; Plaintiff's 42 U.S.C. §1985(3) and §1986 claims for conspiracy; Plaintiff's equal protection claim for racial discrimination; and Plaintiff's negligent infliction of emotional distress claim.

Plaintiff does not have pending claims for failure to intervene[2], malicious prosecution[3] IIED,[4] or violation of Fifth Amendment rights, notwithstanding his reference to them in his Opposition to the Defendants' Motion for Summary Judgment.

## II.

**PLAINTIFF HAS FAILED TO ESTABLISH THE EXISTENCE OF A MATERIAL FACT THAT WOULD PRECLUDE THE ENTRY OF SUMMARY JUDGMENT IN FAVOR OF ALL OF THE DEFENDANTS**

To avoid summary judgment, the plaintiff must produce evidence from which a jury could reasonably find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The "mere existence of a 'scintilla' of evidence is not enough to create a 'genuine issue of material fact' in order to preclude summary judgment. Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment. *Nelson v. Pima Community College,* 83 F.3d 1075, 81-82 (9th Cir. 1996); see also, *Hahn v. Sargent,* 523 F.2d 461, 467 (1st Cir. 1975) (although parties opposing summary judgment are "entitled to all favorable inferences [they are] not entitled to build a case on the gossamer threads of whimsey, speculation, and conjecture.") It is not enough to show that there is some 'metaphysical doubt' as to the material fact at issue. *Oracle Corp.*, 627 F.3d at 387 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))."

Defendants have addressed each of Plaintiff's remaining claims in detail in their initial Motion for Summary Judgment and will not reiterate the arguments that they have already made in this Reply. Plaintiff has not countered the arguments made by Defendants on each of Plaintiff's four remaining claims with either applicable law or with genuine issues of material fact supported by admissible evidence. The Defendants' Motion for Summary Judgment establishes that Summary Judgment

---

[2] Page 9 of Plaintiff's Opposition.
[3] Page 15 of Plaintiff's Opposition
[4] Page 17, #14

4

should be entered in favor of Defendants City of Henderson, Officers Shaffer and Watts, and Sgt. Abernathy on each and every remaining claim.

### III.

**PLAINTIFF'S STATEMENT OF FACTS CONTAIN MISUNDERSTANDINGS AND/OR MISREPRESENTATIONS WHICH CANNOT CREATE GENUINE ISSUES OF MATERIAL FACT**

Most of what Plaintiff alleges in his Opposition has been addressed in the Defendants' Motion for Summary Judgment.

**1. Plaintiff Misinterprets HPD's Preliminary Investigations Policy No. DP400**

Plaintiff asserts that the Preliminary Investigations Policy DP400 (DP400) precludes officers from performing aspects of investigation performed in the investigation in issue. By its clear language, the policy provides a framework for investigations and who is assigned to certain types of investigations. It does not provide direction concerning everything to be done in an investigation because every investigation is different based upon the facts of the particular case. None of the Defendants violated the policy with respect to the investigation in issue in this matter. If it is the Plaintiff's position that an alleged violation of DP400 was a constitutional violation, he has not plead a cause of action on that basis and has not articulated any specific violation of DP400 or identified a violation of DP400 that would be a constitutional violation that would support any of Plaintiff's remaining claims. Defendants do not know how a violation of DP400 could be found to be a constitutional violation. DP400 does not present an issue that creates a genuine issue of material fact that would preclude entry of summary judgment in favor of all of the Defendants in the above-entitled matter.

**2. Plaintiff Attempts to Criticize HPD's Response to Morrell Park, and Particularly the Response to his Location next to the Scene of the Robbery at p. 3-4 of the Opposition**

Plaintiff continues to complain that Defendant Officers responded to the area next to where Plaintiff was positioned behind his car after a call from dispatch conveyed information from an

independent witness, of Plaintiff's potential involvement in the robbery. He complains that only the two Black males had that happen. He does not understand why there was not a similar response to "white witnesses." There were no calls stating that anyone else in the park, other than what the victim, white or otherwise, was involved or possibly involved in the robbery. Plaintiff and Mr. Love were the only ones in the parking lot where the robbery occurred. After the robbery occurred. Plaintiff became a suspect, while others did not, when Plaintiff was identified to HPD as being involved or possibly involved.

### Affidavits from Another Case, Plaintiff's E-8 are Inadmissible

Plaintiff has affidavits of unknown origin from two individuals who state that they have worked for HPD. The Affidavits are from the lawsuit of *LaTesha Watson v. City of Henderson*. LaTesha Watson is a former Police Chief of the Henderson Police Department who was terminated for cause in 2019. After Ms. Watson's termination, she sued the City of Henderson and several employees of the City alleging several claims, including, but not limited to racial discrimination. The Defendants prevailed on all claims through motions to dismiss and for summary judgment. Judgment was entered against Ms. Watson and she has appealed to the 9th Circuit of the U.S. Court of Appeals See Declaration of Counsel. Former Chief Watson had been gone from HPD for several years when the two referenced affidavits offered by Plaintiff here were made in January 2024.

**Xavier Johnson**, one of the affiants, was only an officer with the City of Henderson for a short time, starting approximately 2 years after Former Chief Watson's termination. Most of his time at the City would have been in the police academy followed by field training. His affidavit makes general allegations, with no specificity, concerning his ". . . experiences while at Henderson Police Department which [he] felt were racially based . . .", and how he perceived that he was treated. In his perception he speculates that he was treated poorly because he is Black. His affidavit contains much speculation. It is made from an employment claim basis. It does not reference anybody involved in this action.

6

**Hector Villa's** affidavit has similar contents to Xavier's. Most statements in it are non-specific with no time frames given. He also has non-specific language, as well as allegations, concerning his perception of being discriminated against. He has some allegations regarding Former Chief Watson, while she was employed at the City.

These affidavits appear to be irrelevant to this case, and do not have information that would be specific enough to possibly make them relevant to the issues in this case. The affidavits constitute are double hearsay, and the statement therein consist of speculation, vague, non-specific claims and statements that are irrelevant to the matters in issue in this case. At summary judgment, a district court may consider hearsay evidence submitted in inadmissible form, only if the underlying evidence could be provided in admissible form at trial. *JL Beverage Co., LLC, v. Jim Beam Brands Co.* 828 F.3d 1098, 1110 (9th Cir. 2016). The content of the proffered affidavits cannot be provided in admissible form as portions are themselves hearsay, including statements such as: "I heard a number of officers make disparaging statements" and other references to non-specific statements alleged to have been heard[5] by the attesting individual. The affidavits also contain opinions of the affiants and speculation that would be inadmissible at trial. Even if accepted for purposes of the Plaintiff's Opposition, the two affidavits do not provide potential evidence that would create a genuine issue of material fact sufficient to defeat summary judgment in this case.

3. **Plaintiff Misinterprets** *Hiibel v. Sixth Jud. Dist. Court*, 542 U.S. 177 (2004)

Plaintiff claims that the court found that court in Hiibel found that "plaintiff was only required to give his first and last name which he did and was found not guilty of obstruction . . . ."on p 5 of Plaintiff's Opposition. It appears that in part of the sentence Plaintiff may be referring to himself, but it is unclear.

---

[5] Hector Villa Affidavit attached to Plaintiff's Opposition as Exhibit E-8. See also Affidavit of Xavier Johnson, same exhibit.

7

Plaintiff infers that *Hiibel* stands for the proposition that not providing a middle name cannot be obstruction. The case does not state anything remotely close to Plaintiff's [mis]representation. In *Hiibel* the individual who was charged with obstruction, (Hiibel) refused to identify himself in response to an investigating officer's request for identification. Hiibel was charged with, and convicted of, obstruction under Nevada's "stop and identify" statute, NRS 171.123. The statute is similar to NRS 197.190 pursuant to which Plaintiff was charged with obstruction in this matter. The initial stop was based upon reasonable suspicion in *Hiibel*, as it was in Plaintiff's case. Hiibel was found guilty of obstruction. The Nevada Supreme Court held that the arrest for refusing to identify did not violate the Fourth Amendment, and that Hiibel's conviction for refusing to identify himself was not a violation of his Fifth Amendment rights. The case was taken to the United States Supreme Court

In the U.S. Supreme Court's decision in *Hiibel* it stated, "[b]ased upon the Defendant Officers' knowledge and observations at the time that they made contact with Plaintiff, they had reasonable (and particularized) suspicion that plaintiff may have been involved with committing the robbery." The same circumstance existed in the instant matter. Where reasonable suspicion for the stop exists, it is well established that the officer may ask a suspect to identify himself. *U.S. v. Villagrana-Flores, 467 F. 3d 1269* (10th Cir. 2006); *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 186, 124 S. Ct. 2451 (2004); see also *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247.

In *Hiibel,* the court stated that, "[o]btaining a suspect's name during a Terry stop:

> . . . serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere. *Id.*

Contrary to Plaintiff's representation, neither court in *Hiibel* held that an individual is only required to give "a name and not his full identifying details" nor did the court state that an individual did not have to give his middle name.

8

### 4. There was Probable Cause for both of Plaintiff's Arrests

Plaintiff argues at page 6 of his opposition that Defendants argued on their Motion to Dismiss that there was probable cause for Plaintiff's arrest for obstruction and that Defendants have switched to now argue that there was probable cause for his arrest for the bench warrant. The argument on the Motion to Dismiss was made based on the allegations of Plaintiff's 1st Verified Complaint, so there may have been some difference, due to that difference. On Defendants' Motion for Summary Judgment, Defendants have set forth their argument thoroughly and will not repeat it here. However, Plaintiff again misstate the argument.  It has always been Defendants' position that probable cause existed for arrest of the Plaintiff on both charges.

In their Motion for Summary Judgment, Defendants establish the existence of probable cause for both the arrest on the bench warrant and on the obstruction charge as a matter of law. Both were lawful arrests.  Plaintiff was arrested for the bench warrant first. It is clear from Officers Shaffer and Abernathy's Body Worn Camera ("BWC") videos that Plaintiff was told that he was being arrested for the bench warrant, and that if he continued to refuse to provide his middle name, that he would be charged with obstruction. There is no question that Plaintiff was arrested for the bench warrant first.

Plaintiff incorrectly cites *Moreno v. Baca*, 431 F. 3d 633, 640-641 (9th Cir. 2005) as authority for his contention that a suspicionless search and seizure cannot be justified by a retroactive warrant. In the case at bar, unlike *Moreno*, the investigation of Plaintiff was based on reasonable suspicion, thus there was no suspicionless search or seizure.  Defendants have fully discussed the propriety of Plaintiff's arrest for the bench warrant and for the obstruction charge in their Motion for Summary Judgment. Plaintiff does not provide any authority that would refute or negate the basis for Defendants' arguments.  For that reason, summary judgment should be granted in favor of Defendants on Plaintiff's Fourth Amendment claim.

### 5. The Investigatory Stop was Reasonable as a Matter of Law

"Despite a possible innocent explanation for a police observation, a stop may be founded on reasonable suspicion" *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). The court held that innocent explanations for observations providing a reasonable suspicion for investigatory stop of a vehicle did not undermine determination that reasonable suspicion existed as the quantum proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause. "Despite a possible innocent explanation for every police observation, a stop may be founded on reasonable suspicion." (Emphasis added); *cf. Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("a policeman...is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Baker v. McCollan*, 443 U.S. 137, 145-146 (1979) ( "[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently ever claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.").

These rules bear on the materiality of the evidence because of the nature of the standard for reasonable suspicion which is less than a preponderance of the evidence. *See United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). The issue is not what preponderates, it is merely whether there is enough to support a reasonable suspicion.

Plaintiff's description of what he speculates should have happened in response to the witness call to dispatch, is not admissible It seems that he is trying to give an expert opinion that he is not qualified to make. That section certainly does not contain or constitute a genuine issue of material fact. The stop/investigation of Plaintiff was based upon reasonable suspicion and was lawful. The information obtained lead to a probable cause basis for Plaintiff's arrest. Summary Judgment in favor of Defendants is appropriate.

Plaintiff claims that the investigation concerning his possible involvement was "extended beyond its original purposes" when officers sought Plaintiff's driver's license (which he did not have), checked for warrants and searched/impounded the vehicle that Plaintiff had driven to the park. Plaintiff does not establish how obtaining Plaintiff's identification and checking for warrants went beyond the scope of the investigation.

Plaintiff has not pled a claim alleging delays in HPD's investigation, and should not be permitted to add new claims at this point. A review of the undisputed facts establishes that the Plaintiff's detention and arrest were constitutional and done in accordance with applicable law. Plaintiff only cites references to "suspicionless stops," to support his position. The case at bar does not involve a suspicionless stop. Here there was reasonable suspicion. A review of the videos concerning the progress of the investigation of the robbery, and Plaintiff's possible participation, establishes that if there was any delay, it was caused by Plaintiff's failure to cooperate and his efforts at gamesmanship. Plaintiff did not allege a claim for delay, and he did not provide any legal authority that would support a claim for delay under the factual circumstances present here. If Plaintiff's claim, raised for the first time in his opposition is considered, summary judgment should be granted in Defendants' favor for such claim.

### 6. Plaintiff's Opposition Confirms that Plaintiff Cannot Establish the Existence of an Equal Protection Claim for Racial Discrimination

Plaintiff's Opposition makes clear that Plaintiff's only basis for his racial discrimination claim is his subjective belief that his arrest and his other encounters with Defendants must have occurred for racially discriminatory reasons because he is a Black male adult. A plaintiff's subjective belief that a defendant's conduct is motivated by discriminatory intent is not sufficient to defeat summary judgment. *Aquino v. County of Monterey Sheriff's Dept.*, No. 5:14-cv-03387-EJD, 2016 WL 5946867 at *14 (N.D. Cal. Spt. 29, 2016): *see also Mc Kenzie v. City of Milpitas*, 738 F. Supp. 1293, 1301 (N.D. Cal. 1990

Summary Judgment should be entered in favor of Defendants on Plaintiff's equal protection claim for racial discrimination.

**7. Summary Judgment Should be Granted on Plaintiff's Conspiracy Claims**

Plaintiff fails to provide any evidence or applicable law to support his conspiracy claims. He vaguely claims that his previous response to the Defendants' Motion to Dismiss provides his opposition to the Defendants' Motion for Summary Judgment. In Plaintiff 's Opposition to Defendants' Motion to Dismiss Plaintiff did not provide evidence to support his conspiracy claims but instead relied entirely upon speculation. That is not sufficient to defeat summary judgment. Defendants provided a comprehensive explanation of the reasons that summary judgment should be granted on the Plaintiff's conspiracy claims. Plaintiff has conceded that summary judgment on his conspiracy claims is appropriate, by not disputing, the legal basis for summary judgment included in the Defendants' Motion for Summary Judgment. Plaintiff also failed to provide any genuine issue of material fact that might preclude summary judgment on his conspiracy claims. As a result, there is no opposition to the Defendants' Motion of Summary Judgment based upon either law or fact, and judgment in favor of Defendants should be entered on the Plaintiff's conspiracy claims.

**8. Summary Judgment Should be Entered in Favor of the City of Henderson**

Plaintiff has not opposed the Motion for Summary Judgment seeking judgment in favor of the City of Henderson on the Plaintiff's Monell claim(s). Plaintiff has failed to establish the existence of a Monell claim. In absence of any opposition to the City's Motion for Summary Judgment on the Plaintiff's Monell claim, summary judgment in favor of the City of Henderson is appropriate and should be entered.

**9. Qualified Immunity Applies to all of Plaintiff's Claims against the Defendant Officers**

Plaintiff incorrectly contends, without supporting legal authority, that if an officer's action is unconstitutional, qualified immunity does not apply. In fact, officers are entitled to qualified

immunity unless (1) facts viewed in the light most favorable to plaintiff show that [each of] the officers violated a constitutional right, **and** (2) the right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 553 U.S. 194, 201 (2001), modified by *Pierson*, 555 U.S. 223, 231 (2009).

The test for determining whether a law enforcement officer is entitled to qualified immunity from § 1983 liability is: (1) whether the law governing the officer's conduct was clearly established, and (2) whether under law, a reasonable officer could have believed such conduct was lawful. *Forsythe v. City of Burbank,* 6 Fed. Appx. 600 (9th Cir. 2001). Whether a right is clearly established for the purposes of qualified immunity "depends substantially upon the level of generality at which the relevant "legal rule" is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The Supreme Court "has repeatedly told courts ... not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019) (*citing Kisela v. Hughes*, 584 U.S. –, 138 S.Ct. 1148, 1152 (2018)).

Plaintiff has not refuted the Defendant Officers' entitlement to qualified immunity as a matter of law in the event that a basis for denial of summary judgment on the Plaintiff's claims, or any of them is denied here.  Thus if summary judgment is not granted in Plaintiff's favor on the merits, it will be appropriate for this Court to determine that Defendant Officers are entitled to qualified immunity

As established in the Defendants' Motion for Summary Judgment, and in the instant Reply, the actions of all three Defendant Officers were constitutional.  In instances where Plaintiff contends that actions of the Defendants were unconstitutional, he fails to identify what each officer did or did not do that was unconstitutional. Each officer's actions were not the same, and the Plaintiff must provide a basis for his claims against each individual officer. Blanket claims without identifying the basis for claims against each individual officer are insufficient to establish liability against the Defendant officers. Plaintiff has failed to state the individualized facts that support his claims against

each Defendant Officer. Under the circumstances, summary judgment should be entered in favor of each Defendant Officer.

Plaintiff merely and insufficiently contends that the officers' (as a group, with no correlation to what each officer's involvement was) conduct was "unconstitutional." Plaintiff has failed to establish that any law that he relies on for his nonspecific allegation that there was a constitutional violation was clearly established at the time the conduct occurred. To show that the law was clearly established, the legal basis must be specific to the occurrence claimed to have violated the constitution and cannot be defined at a high level of generality.

## IV.

## CONCLUSION

For the foregoing reasons, in conjunction with those contained in the Defendants' Motion for Summary Judgment (ECF 50), Defendants City of Henderson, Officer C. Watts, Officer B. Shaffer and Sgt. K. Abernathy respectfully request this Honorable Court to enter its Order in the above-entitled action GRANTING Summary Judgment in favor of Defendants, and each of them, upon each and every remaining claim.

DATED: October 23, 2025.

CITY OF HENDERSON

*/s/ Nancy D. Savage*
NANCY D. SAVAGE
Nevada State Bar No. 392
240 Water Street, MSC 144
Henderson, NV 89015
(702) 267-1200 Telephone
Nancy.Savage@cityofhenderson.com
*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October 2025, I served the above and foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (ECF 50),** through the Court's electronic filing system and by depositing a true and correct copy thereof in the United States Mail, postage fully prepaid thereon, and addressed to the following:

>Mark Clifford Sykes
>P.O. Box 674
>Russellville, Arkansas 72811

>/s/ Laura Kopanski
>An Employee of the City of Henderson
>City Attorney's Office

**DECLARATION OF NANCY D. SAVAGE ESQ. IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT THEREOF**

Nancy D. Savage declares, and states as follows:

1. I am an attorney duly licensed and practicing law in the State of Nevada, County of Clark and am a member of the Nevada State Bar in good standing. I am currently employed as an Assistant City Attorney by the City of Henderson at 240 Water Street, Henderson, Nevada 89015 and represent the Defendants City of Henderson, Officer C. Watts, Officer B. Shaffer, and Sgt. K. Abernathy in the above-entitled case.

2. I am over the age of 18 years and have personal knowledge of the facts stated herein, except for those stated on information and belief, and as to those, I believe them to be true. I am competent to testify to the facts set forth herein and will so testify if called.

3. Former City of Henderson Police Chief, LaTesha Watson was terminated for cause by the City in April 2019.

4. After Ms. Watson's termination, she sued the City of Henderson and several employees of the City for several claims, including, but not limited to racial discrimination. The Defendants prevailed on all claims through motions to dismiss and for summary judgment. Ms. Watson has appealed the final judgment to the 9th Circuit of the U.S. Court of Appeals

5. The Affidavits of Hector Villa and Xavier Johnson in this case appear to have been authored and signed in January 2024, to be used by Plaintiff (Watson) in her lawsuit described above.

6. Defendants manually filed a flash drive with video exhibits on August 21, 2025 (ECF 51) for their Motion for Summary Judgment (ECF 50). The flash drive contains videos from officers' Body Worn Cameras, and vehicle dash and rear facing cameras.

7. The following is an index of the sections of the videos where officers interacted with Mr. Sykes to assist the court:

**440 Brian Shaffer Dash Cam 246.0**
0:26:22 – 0:27:01, 0:31:08 – 0:31:50, 0:44:57 – 0:46-17, 0:46:41-0:47:58, 0:49:40-0:50:03

**440 Brian Shaffer Dash Cam (2) 904.2**
0:01:08-0:02:04, 0:02:28-0:26-18(this one can't hear voices), 0:26:21-0:27:00, 0:31:05-0:31:47, 0:32:24-0:32:46, 0:44:20-0:44:41, 0:44:55-0:46:21, 0:46:42-0:47:55, 0:49:39-0:49:54

**440 Brian Shaffer BWC 1.1**
0:01:01-0:01:27, 0:01:34-0:01:53, 0:02:21-0:03:43, 0:06:15-0:07:36, 0:07:45-22:42, 0:23:22-0:24:19, 0:24:48-0:26:52, 0:44:13-0:47:51, 0:49:33-0:53:35

407 **Kevin Abernathy BWC** 338.7
0:18:40-0:23:09

**407 Ed Bogdanowicz BWC 282.1**
0:02:35-0:03:21, 0:03:53-0:09:03, 0:12:19-0:12:38, 0:12:58-0:13:58

Abernathy's Interaction with Sykes on Bogdanowicz' BWC above.
0:10:23-0:11:25, 0:12:33-0:14:42

Sykes asking for warrant on Bogdanowicz's BWC above.
0:14:21-0:14:29

Cody Watts interacting with Sykes on Brian Shaffer's BWC
**440 Brian Shaffer BWC 1.1**
0:03:09-0:03:45, 0:06:13-0:07:15, 0:07:41-0:09:00

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 23, 2025.

/s/ Nancy D. Savage
NANCY D. SAVAGE